Roth and Boyle *vs.* House of Refuge.

(Decided 2d July, 1869.)

---

MARTIN ROTH *vs.* THE HOUSE OF REFUGE. JOHN BOYLE, by his next friend, CHARLES BOYLE, *vs.* THE SAME.

*Relation of the Supreme Bench to the other Courts of Baltimore city—Habeas Corpus—Art. 78, sec. 18 of the Code, relating to the manner of receiving inmates into the House of Refuge.*

The relation of the Supreme Bench to the other Courts of Baltimore city, is that of a Court in *banc*, where parties can have questions of

law deliberately considered by at least three judges, without the delay and expense of an appeal to the Court of Appeals, and where they can have the benefit of such review in many important cases in which an appeal will not lie.

Any matter of law, decided on application for a writ of *habeas corpus*, by any of the several judges assigned to the different Courts in Baltimore city, is subject of review and determination by the Supreme Bench.

The power conferred upon the Justices of the Peace, as well as that conferred upon the Managers of the House of Refuge, by section 18 of Article 78, of the Code of Public General Laws, is not in conflict with the Declaration of Rights or the Constitution of the State.

APPEALS from the Supreme Bench of Baltimore City.

On the 27th of December, 1867, Martin Roth filed in Baltimore City Court, his petition, in which he stated on oath, that his son Frank Roth, aged about twelve years, had been illegally committed, and was unjustly held and detained in the House of Refuge; that his son was so committed without his consent; that he was pecuniarily and morally able to care for and have the custody of his child, who was not of vicious and incorrigible habits, and was not convicted of crime. The petitioner prayed for a writ of *habeas corpus* to have his child brought before the Court and relieved from such unlawful imprisonment.

On the 9th of January, 1868, a similar petition was filed by Charles Boyle, for the release of his son John Boyle, under twelve years of age. In each case the writ was ordered and issued, and the House of Refuge made return thereto, referring to its Act of Incorporation as set forth in Article 78, of the Code of Public General Laws, and claiming to hold each of the boys under a commitment by a Justice of the Peace of Baltimore city, made in virtue of the provisions of said Act. The Court (SCOTT, J.) ordered each boy to be discharged from the custody of the House of Refuge and remanded to the care of his father. The only difference between the cases was

that the committal of Roth was made upon the complaint of his father, while that of Boyle was made " upon complaint and due proof." The House of Refuge moved for a new trial and rehearing in each case, for misdirection and mistake in matters of law determined by the Court; and that the record be sent to the Supreme Bench for a hearing and determination thereon. The record was transmitted from the City Court to the Supreme Bench, where the decision of the former was reversed.

From the decision of the Supreme Bench, these appeals were taken.

The causes were argued before STEWART, GRASON, MILLER, ALVEY and ROBINSON, J.

*W. Parkin Scott* and *Wm. M. Merrick*, for the appellants.

*Frederick W. Brune* and *S. Teackle Wallis*, for the appellee.

ALVEY, J., delivered the opinion of the Court.

The first question to be determined in this case is, whether there exists in the Supreme Bench of Baltimore City the right to review the determination of the judge assigned to the Baltimore City Court, in matters of *habeas corpus?* for if so, then, it is clear, there is no right of appeal to this Court from the judgment of the Supreme Bench, and this appeal must be dismissed. For that there is no right of appeal to this Court, in matters of *habeas corpus*, is no longer an open question, and the only ground upon which the present appeal can be maintained is, that the Supreme Bench has assumed and exercised unauthorized jurisdiction, and that its judgment, in so far as it has exercised unwarranted jurisdiction in the premises, may be reviewed and reversed.

The solution of the question of jurisdiction here in-

volved depends upon the construction of part 4 of Art. 4 of the Constitution, in reference to the courts of Baltimore city, and particularly of the 33d section of that article.

Without stating the provisions of the preceding sections in relation to the organization and style of the courts, the apportionment of powers and jurisdiction to each, and the manner in which they are to be conducted in the administration of justice, it is necessary to notice particularly the language employed in the 33d section of Art. 4, in reference to the powers and jurisdiction of the Supreme Bench, as distinguished from the powers and jurisdiction of the other courts of the city.

By that section it is declared to be the duty of the Supreme Bench "to provide for the holding of as many general Terms as the performance of its duties may require, such general Terms to be held by not less than three judges; to make all needful rules and regulations for the conduct of business in each of the said Courts, during the session thereof, and in vacation, or in chambers, before any of said judges; and shall also have jurisdiction to hear and determine all motions for a new trial in cases tried in any of said Courts, where such motions arise, either on questions of fact, or for misdirection upon any matters of law, and *all motions*, in arrest of judgment, *or upon any matters of law determined by the said judge or judges, while holding said several Courts ;* and the said Supreme Bench of Baltimore City shall make all needful rules and regulations for the hearing before it of all of said matters."

It will be observed that the power given to this Court is large and comprehensive. If there be *any matter of law* determined by the judges in the several Courts, except it be in cases of appeal from justices of the peace, it is liable to be reheard and determined by the Supreme Bench; the great object being to secure uniformity of decision, and

greater deliberation of judgment than was practicable in the separate Courts, presided over by a single judge. And such being the scope and design of its jurisdiction, the relation of the Supreme Bench to the other Courts of the city is that of a Court *in banc,* where parties can have questions of law deliberately considered by at least three judges, without the delay and expense of an appeal to the Court of Appeals, and where they can have the benefit of such review in many important cases where an appeal will not lie. Why, then, is matter of law, determined on application for *habeas corpus,* not within the meaning and design of the jurisdiction conferred on the Supreme Bench? It must be admitted that the language employed is comprehensive enough to embrace it; and if it be excluded at all, it must be so only because of the want of adaptation of the jurisdiction to the particular remedy. But we see nothing of the want of fitness in the application of such jurisdiction to the case of *habeas corpus.* On the contrary, many most cogent reasons might be suggested, why determinations on application for *habeas corpus* should be embraced within the jurisdiction. We know from experience, that on such applications questions of the greatest delicacy, and of the most serious import, are frequently presented for the consideration of a single judge, often without opportunity for mature deliberation, and seldom with the aid of full and well-digested argument of counsel. If, therefore, it be the object of the constitutional provision to secure a more deliberate and uniform judgment in matters of grave concern to the citizen and the public, it is difficult to imagine any good reason why it should not apply to the case of *habeas corpus,* as well as to any other proceeding in which a matter of law is determined. That the proceeding in its nature is summary can make no manner of difference; for, as we have seen, the Supreme Bench has full power to regulate, and to provide for holding, its general Terms as often as may be required for the

despatch of business, and we must suppose that its sessions are held with reference to the nature and character of the business that falls within its jurisdiction; nor does the Constitution at all discriminate as to the nature and character of the proceeding in which a matter of law may be determined. ˙ And it would be an exceedingly narrow and restricted view to take of the subject, to hold that because of the summary proceeding, and non-conclusive nature of the judgment in matter of *habeas corpus,* the jurisdiction, instituted for the correction of error, and to avoid the consequences of immature and conflicting judgments, did not apply to it; though the language employed in conferring the jurisdiction be amply sufficient to comprehend such matter.   Such, however, is not our conclusion derived from the language of the Constitution; being clearly of opinion that the matter of law, decided on application for *habeas corpus,* by any of the several judges assigned to the different courts in Baltimore city, is subject of review and determination by the Supreme Bench.

This conclusion properly disposes of the case, as presented to this Court ; but inasmuch as a grave constitutional question has been fully discussed, involving the power of a Justice of the Peace to commit, and of the Managers of the House of Refuge to detain minors, charged as and proved to be persons of incorrigible or vicious conduct, so that his or her control is beyond the power of parent, guardian, or next friend, we deem it proper, in view of the great public importance of the subject, to say, without stating at large the reasons for the conclusion, that we are clear in the opinion that the power conferred upon the Justice of the Peace, as also that conferred upon the Managers of the House of Refuge by the 18th section of Art. 78, of the Code of Public General Laws, is in no wise in conflict with the Declaration of Rights, or the Constitution of this State.   And that we fully concur in the reason and judgment of the Supreme Court of Penn-

Roth and Boyle *vs.* House of Refuge.

sylvania, in disposing of a similar question in the case of *Ex parte Crouse*, 4 *Whart.*, 9.

*Appeal dismissed.*

(Decided 2d July, 1869.)

The case of John Boyle against the House of Refuge, argued at the same time with the case of Martin Roth, is, of course, determined by the opinion we have expressed in regard to Roth's case. The appeal will be dismissed.

*Appeal dismissed with costs.*

ROBINSON, J., dissents as to the construction of the clause of the Constitution conferring jurisdiction upon the Supreme Bench, but concurs in the view that the sections of the Code, relating to the House of Refuge, are constitutional and valid.

---

In accordance with the suggestion of Judge ALVEY, the following opinion of the Court in *Ex parte Crouse*, 4 *Wharton*, 11, is appended :

PER CURIAM.—The House of Refuge is not a prison, but a school where reformation, and not punishment is the end ; it may indeed be used as a prison for juvenile convicts who would else be committed to a common jail, and in respect to these the constitutionality of the Act which incorporated it, stands clear of controversy. It is only in respect of the application of its discipline to subjects admitted on the order of a Court, a magistrate, or the Managers of the Almshouse, that a doubt is entertained. The object of the charity is reformation, by training its inmates to industry; by imbuing their minds with principles of morality and religion ; by furnishing them with means to earn a living: and, above all, by separating them from the corrupting influence of improper associates. To this end, may not the natural parents, when unequal to the task of education, or unworthy of it, be superseded by the *parens patriæ*, or common guardian of the community ?

It is to be remembered that the public has a paramount interest in the virtue and knowledge of its members, and that of strict right, the business of education belongs to it. That parents are ordinarily intrusted with it, is because it can seldom be put into better hands ;

but where they are incompetent or corrupt, what is there to prevent the public from withdrawing their faculties, held as they obviously are, at its sufferance ? The right of parental control is a natural, but not an unalienable one. It is not excepted by the Declaration of Rights out of the subjects of ordinary legislation, and it consequently remains subject to the ordinary legislative power, which if wantonly or inconveniently used, would soon be constitutionally restricted, but the competency of which, as the government is constituted, cannot be doubted. As to abridgment of indefeasible rights by confinement of the person, it is no more than what is borne, to a greater or less extent, in every school ; and we know of no natural right to exemption from restraints which conduce to an infant's welfare. Nor is there a doubt of the propriety of their application in the particular instance. The infant has been snatched from a course which must have ended in confirmed depravity, and not only is the restraint of her person lawful, but it would be an act of extreme cruelty to release her from it.

*Remanded.*