# MARYLAND COMMUNITY DEVELOPERS, INC. *v.* STATE ROADS COMMISSION OF MARYLAND

[No. 306, September Term, 1970.]

*Decided March 4, 1971.*

The cause was argued before HAMMOND, C. J., and

Barnes, McWilliams, Finan, Singley, Smith and Digges, JJ.

*Samuel C. Steelman, Jr.,* and *C. L. Fossett, Jr.,* with whom were *Beatty & McNamee* on the brief, for appellant.

*Carl Harrison Lehmann,* with whom were *Francis B. Burch, Attorney General, Joseph D. Buscher, Special Assistant Attorney General,* and *Joseph J. Bonner, Special Attorney,* on the brief, for appellee.

Smith, J., delivered the opinion of the Court.

A landowner here yells, "Foul!" relative to a jury trial in a condemnation case that produced for him a verdict of only slightly over $8,600.00 per acre when its appraiser placed a value of approximately $22,000.00 per acre. Finding no foul, we shall affirm the judgment.

The facts are basically undisputed. In 1962 appellant, Maryland Community Developers, Inc. (landowner), purchased a tract of land comprising approximately 38 acres in Prince George's County about four miles north of College Park and midway between U. S. Routes 1 and 29, north of the intersection of Powder Mill Road and Beltsville Road. This litigation was produced by the construction of Interstate Route 95, an eight-lane superhighway between Washington and Baltimore. The landowner complains to us, (1) because the trial judge permitted the State Roads Commission (the Commission) to call the landowner's president as a witness and from him ascertain that the purchase price of the land in 1962 was approximately $4,500.00 per acre, (2) because the trial judge admitted into evidence a 1961 aerial photograph, and (3) because a jury trial was required in the absence of agreement by all parties to a court trial. The landowner further contends that the record taken as a whole demonstrates the substantial injustice brought about by the court's rulings on the first and second points.

## I and II

The Commission relied upon *First Nat'l Realty v. S. R. C.*, 255 Md. 605, 258 A. 2d 419 (1969). In that case the president of the landowner was called as an adverse witness and was obliged to testify as to the purchase price. On cross-examination he testified as to subsequent expenditures. There was no cross-examination in this case, with an intimation to us by counsel that they dared not cross-examine lest they waive the objection they had made to the original questions. This fear was unfounded. *MacEwen v. State,* 194 Md. 492, 504-5, 71 A. 2d 464 (1950), and *Wolfinger v. Frey,* 223 Md. 184, 193, 162 A. 2d 745 (1960).

The landowner argues that the probative value of neither the purchase price nor the 1961 aerial photograph was established. The aerial photograph was followed up with a 1964 and a 1969 photograph. The photographs were admitted on the strength of *Hance v. State Roads Comm.,* 221 Md. 164, 156 A. 2d 644 (1959). In that case the objection was made that the photograph did not fairly represent the conditions as they existed on the day of valuation. Judge Prescott commented for the Court:

> "The fallacy of this claim is that the photographs were not offered as representations of conditions as they existed on March 4, but as true representations of conditions as they existed when the pictures were actually taken, which, as we have pointed out above, was followed by testimony of the condition of the property, including the improvements, down to the time of the inspection thereof by the jury." *Id.* at 172.

This Court there failed to find from the record that the trial judge had abused his discretion.

The landowner here argues that there was no attempt "other than [by] the bare introduction" of the subsequent photographs to connect the 1961 photograph by testimony with the development which occurred in 1964 and

1969, the dates of the other two photographs. Counsel for the Commission in his opening argument before the jury commented on the $4,500.00 per acre purchase price "back in 1962", said the landowner had "a right to a reasonable profit of money", but went on to add that he did not "believe [the landowner had] a right to raid the treasury." The landowner says all of this adds up to unfairness.

In *First Nat'l Realty* Judge Singley said for the Court:

> "But even assuming, *arguendo,* that the admission of the evidence was error we do not think that this would justify a reversal. As Judge Prescott, speaking for this Court in *Hance v. State Roads Comm'n,* 221 Md. 164, 156 A. 2d 644 (1959), said:
>
>> 'Courts are reluctant to set aside verdicts for errors in the admission or exclusion of evidence unless they cause substantial injustice. This is especially true in condemnation proceedings. Such cases usually consume much time in trial, and are expensive in nature. As a rule, they are determined by a myriad of different items of evidence. The exclusion or admission of small items of evidence of doubtful materiality are not likely to be of great importance in the outcome of the case, and most courts refuse to set aside a verdict in cases of this kind, for error in the rulings on questions of evidence, unless, as indicated above, substantial prejudice be shown. * * *.' 221 Md. at 176.
>
> See also *State Roads Comm'n v. Kuenne,* 240 Md. 232, 235, 213 A. 2d 567 (1965). No such prejudice has been shown to exist in this case." *Id.* at 610.

These comments are equally applicable here. See also *Belworth, Inc. v. City of Baltimore,* 256 Md. 369, 374, 260 A. 2d 284 (1970).

The weight of the evidence was for the jury. A purchase price for a property being condemned about six years before the date of valuation for condemnation purposes (April 5, 1968, in this instance) is not so remote as to be without relevance. In any event, by use of the 1961, 1964, and 1969 photographs, counsel for the landowner could well have graphically demonstrated to the jury the change in conditions — and, therefore, the difference in values — between 1962 and the 1968 valuation date. In *Belworth* Judge Digges said for the Court:

> "Sales of the land in question may be admissible to show market value, *Baltimore v. Brick Co.,* 80 Md. 458, 31 A. 423 (1895), but whether any particular sale is admitted rests in the sound discretion of the trial court. In *Baltimore City v. Schreiber,* 243 Md. 546, 551, 221 A. 2d 663 (1966), we stated:
>
>> 'There are a myriad of circumstances to be considered in each case in determining if the time the purchase price was paid was too remote to have any probative value in aiding the jury's ascertainment of present fair market value. Such circumstances include: degree of change in the condition of the property, changes in the condition of the surrounding property or in the character of the neighborhood, economic growth in the area, etc.'
>
> We have indicated that if there exists a question in the trial judge's mind as to the probative value of any sale, the better rule is to admit it, leaving the weight to be given to that sale to the jury in light of such distinguishing factors as may be brought to its attention by cross-examination or otherwise. This rule has been enunciated both with regard to sales of the land in question, *Baltimore City v. Schreiber, supra,* and also to comparable sales in the neighborhood,

*Lustine v. State Roads Comm.*, 217 Md. 274, 142 A. 2d 566 (1958), but nowhere have we established a hard and fast standard either for admission or exclusion of such evidence." *Id.* at 373-74.

In *Baltimore v. State Roads Comm.*, 232 Md. 145, 147-48, 192 A. 2d 271 (1963), photographs taken in 1949 were admitted as relevant to a 1956 date of taking in a 1962 trial. There Chief Judge Brune commented, "The admission of the photograph was within the discretion of the trial court * * * and we find no abuse of discretion."

We find no abuse of discretion upon the part of the trial judge in admitting the 1962 selling price and the 1961 photograph. The only basis for a conclusion relative to "substantial injustice" apparently is the variance between the landowner's appraisal and the verdict. The verdict was almost in the middle of the Commission's appraisals. It is a fact of life that appraisers for landowners and condemning authorities rarely see the same value in any given property. The fact that a jury accepts one appraisal rather than another surely could seldom add up to substantial injustice.

### III

When the case was called for trial, counsel for the landowner made the point that neither the plaintiff nor defendant had requested a jury trial and requested removal of the case from the jury calendar on that ground, contending that the "statute" requiring a jury trial is unconstitutional.

Maryland Rule U15 requires a jury trial in eminent domain proceedings unless "all of the parties concerned file a writing submitting the case * * * to the court for determination without a jury". The landowner points to the fact that Maryland Rule 343 in other civil proceedings provides for trial "before the court without a jury, unless an election in writing separate and distinct from the pleadings be filed, in person or by attorney, for a

trial by jury * * *." It sees this difference in proceedings as "unreasonable, arbitrary, and capricious" and says it "is discriminatory as against parties to an eminent domain proceeding because those parties are denied the opportunity to elect by themselves, without the need of agreement by the adverse party, whether or not to have a jury trial."

The present Rule 343 was adopted pursuant to the 34th Report of the Standing Committee on Rules of Practice and Procedure and is of recent vintage. In commenting upon its then proposed Rule 1211 — Assignment of Actions for Trial, the committee said in its report:

> "The assignment procedures suggested apply only to civil cases. To facilitate assignment procedure, the committee also recommends * * * Rule 343 (Jury Trial — Election) which provides for election of a jury trial. The procedure proposed will eliminate the time consuming business of docket calls in open court and will permit those responsible for assignment of cases to ascertain, at an early stage, which cases must be set for jury trial and which cases may be assigned for trial by the court."

It must be remembered that in many parts of the state prior to the adoption of Rule 343 it was not necessary to affirmatively elect a jury trial with the initial pleading, as was the Baltimore City practice, but this election was made at the call of the docket in advance of or at the beginning of the term.

In *Houston v. Lloyd's*, 241 Md. 10, 215 A. 2d 192 (1965), Judge McWilliams said for the Court:

> "It is well settled that the right to a jury trial may be subjected to reasonable regulation; indeed, it is generally acknowledged that it can, for all practical purposes, become meaningless to the individual and burdensome to the state unless the exercise of it is regulated to some ex-

tent. Virtually all of the busy courts in this country enjoy the benefits of statutes or rules similar to the rule here under attack and seldom has the validity of those statutes or rules been successfully challenged." *Id.* at 14.

In that case the sole question presented was whether a rule of the Circuit Court for Baltimore County requiring an affirmative written election for a jury trial violated Art. XV, § 6 of the Constitution of Maryland guaranteeing the right to a jury trial. It was held that it did not. Judge McWilliams reviewed many cases including *Knee v. City Pass. Ry.*, 87 Md. 623, 40 A. 890, 42 L.R.A. 363 (1898), where the Court considered a complaint relative to an order of a trial court staying all further proceedings until the costs of the first trial and the appeal, $139.75, should be paid. It was contended that the statute entitling the court to pass such an order infringed the constitutional guarantee of the right of trial by jury and Art. 19 of the Declaration of Rights which declares that every man "ought to have justice and right, freely without sale." Judge McWilliams there quoted extensively from the opinion in *Knee* by Judge Pearce, which he called "both learned and lengthy". Judge Pearce said in part:

"This common law practice [requiring costs to be paid as a condition precedent to a jury trial], ante-dating our Constitution and Declaration of Rights, led naturally and almost inevitably, as the field of litigation widened, to the enactment of statutes, such as that now before us, having for their object *the just regulation of the right of trial by jury*. Such statutes from time to time have been assailed by the independent and aggressive thinkers of the profession, and it is gratifying to note with what sound and wise discrimination, in the main, the Courts have dealt with the subject, *always preserving unimpaired the ultimate historical right as it existed at the time of our separation from the mother*

*country, while sustaining all reasonable regulations of the exercise of that right made in the interest of the general public.* Thus the payment of jury-fees, in States where such payment is required by statute, as a condition to a jury trial, has been very vigorously attacked as affixing an unconstitutional burden to this right, but the decisions have almost uniformly sustained the statutes." *Id.* at 627. (Emphasis added.)

The Court then further commented in *Houston*:

"It seems to us much less burdensome to require a *timely election* of the right to a jury trial than to require the *payment of money* as a condition precedent to its exercise, and it follows that if the one does not affront the constitutional guarantee then the other surely does not." *Id.* at 22. (Emphasis in original.)

In *Chappell Chemical Co. v. Sulphur Mines Co.,* 172 U. S. 474, 19 S. Ct. 268, 43 L. Ed. 520 (1899), the Supreme Court of the United States had before it a case upon which our predecessors had passed in 85 Md. 684 (unreported), 36 A. 712 (1896). The Supreme Court there said:

"Claims under the Constitution of the United States were set up in several of the motions and denied by the court. One claim was that the constitution of Maryland abridged the right of trial by jury in the courts of Baltimore city without making a similar provision for the counties of the State, and that this denies to litigants of the city the equal protection of the laws. This is not tenable. *Missouri v. Lewis,* 101 U. S. 22; *Hayes v. Missouri,* 120 U. S. 68." *Id.* at 474-75.

We see no real difference between this case and *Chappell* and *Houston.* We regard the rule here involved as a

reasonable regulation in the matter of court administration. Insofar as validity is concerned, we see no difference between the parties' being required to affirmatively elect a jury trial and their being required to affirmatively elect a court trial. It is the right of trial by jury which is guaranteed by the Constitution, not the right of trial by court.

*Judgment affirmed, appellant to pay the costs.*