533 A.2d 671

**MONTGOMERY COUNTY, Maryland**

v.

**John T. McNEECE.**

**No. 118, Sept. Term, 1985.**

Court of Appeals of Maryland.

Nov. 24, 1987.

Richard D. Caplan, Asst. Co. Atty. (Paul A. McGuckian, Co. Atty. and Bruce P. Sherman, Sr. Asst. Co. Atty., on the brief), Rockville, for appellant.

John B. Walsh, Jr., Rockville, for appellee.

Argued Before MURPHY, C.J., and SMITH,* ELDRIDGE, COLE, RODOWSKY, COUCH * and McAULIFFE, JJ.

McAULIFFE, Judge.

Pleased with his promotion to sergeant, but chagrined by the absence of any increase in his salary, firefighter John T.

---

* Smith and Couch, JJ., now retired, participated in the hearing and conference of this case while active members of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, they also participated in the decision and adoption of this opinion.

McNeece sought administrative relief from the Montgomery County Fire and Rescue Commission. Unsuccessful there, as well as before the Montgomery County Merit System Protection Board to which he then appealed, McNeece noted a further appeal to the Circuit Court for Montgomery County. There, over the strong objection of Montgomery County, Maryland, he was successful, and Judge Stanley Frosh entered an order reversing the administrative action and directing that the Commission award McNeece an increase in salary.

Within thirty days of the entry of that order, Montgomery County filed a Notice for In Banc Review. McNeece promptly countered with a motion to dismiss. The court in banc granted the motion, finding that Montgomery County had "failed to reserve its points or questions for consideration by the court in banc in accordance with § 22 of Art. IV of the Maryland Constitution." Montgomery County filed an order for appeal to the Court of Special Appeals, and that court dismissed the appeal, citing Maryland Rule 1035(b)(1) and *Medical Examiners v. Steward*, 207 Md. 108, 113 A.2d 426 (1955). We granted Montgomery County's petition for certiorari to consider the following questions:

Did the Court of Special Appeals err in dismissing the appeal as one not allowed by law?

Did the Circuit Court err in dismissing a request for an in banc appeal and in holding that compliance with Maryland Rule 2–551 did not satisfy the State constitutional requirements of Maryland Constitution, Art. IV, § 22?

Additionally, we directed the parties to brief and argue the question of this Court's authority to issue a writ of certiorari to review the action of the Court of Special Appeals under the circumstances of this case.

I.

We first address the question of our jurisdiction to issue a writ of certiorari in this case. Article IV, § 14 of the Constitution of Maryland provides that "[t]he jurisdiction of the Court of Appeals shall be co-extensive with the

limits of the State and such as now is or may hereafter be prescribed by law." Section 12–201 of the Courts and Judicial Proceedings Article (Md.Code 1974, 1984 Repl.Vol.) states that, except in certain instances not here relevant,

> in any case or proceeding pending in or decided by the Court of Special Appeals upon appeal from a circuit court ... any party, including the State, may file in the Court of Appeals a petition for certiorari to review the case or proceeding.

This appeal involves a case decided by the Court of Special Appeals upon appeal from a circuit court. It differs from the typical case only in that it has also been considered by a separate appellate tribunal—an in banc court. That difference is insufficient to remove this case from the broad coverage of § 12–201 of the Courts Article, and thus we hold that this Court has statutory jurisdiction to issue a writ of certiorari to the Court of Special Appeals in a case involving an in banc appeal. Whether this Court has, or whether the lower appellate tribunals involved in this case had, jurisdiction to consider the underlying issues are separate questions that we address in the following sections. We here decide only that we have jurisdiction to issue a writ of certiorari to enable us to consider those questions.

## II.

Turning to the question of whether the Court of Special Appeals properly dismissed Montgomery County's appeal from the action of the in banc court, we hold that it did. The Constitution specifically provides that the decision of the in banc court is final as to the party appealing to that court, but not as to the non-moving party.

> [T]he decision of the said Court in banc shall be the effective decision in the premises, and conclusive, as against the party, at whose motion said points, or questions were reserved; but such decision in banc shall not preclude the right of Appeal, or writ of error to the adverse party, in those cases, civil or criminal, in which

appeal, or writ of error to the Court of Appeals may be allowed by Law.

Constitution of Maryland, Article IV § 22.

The Legislature has also acted to implement the constitutional mandate of finality. Section 12–302 of the Courts Article sets forth specific exceptions to the general right of appeal granted by § 12–301, and in subsection (d) provides:

Section 12–301 does not permit an appeal from the decision of the judges of a circuit court sitting in banc pursuant to Article IV, § 22 of the Constitution, if the party seeking to appeal is the party who moved to have the point or question reserved for consideration of the court in banc.

This Court has consistently held that the decision of the court in banc is conclusive, final, and non-appealable by the party who sought the in banc review, and as to that party a reservation of points or questions for consideration by a court in banc is a substitute for an appeal to the Court of Special Appeals. *Buck v. Folkers*, 269 Md. 185, 186–87, 304 A.2d 826 (1973); *Medical Examiners v. Steward*, 207 Md. 108, 111–12, 113 A.2d 426 (1955); *Costigin v. Bond*, 65 Md. 122, 3 A. 285 (1886).

Against this array of constitutional, statutory, and decisional law, Montgomery County presents a two-pronged attack. First, it urges that the in banc court's determination of the existence *vel non* of its own jurisdiction is always reviewable on appeal; and second, that the decision of the in banc court is final and conclusive only as to those issues actually reserved and presented by the moving party, and not, therefore, as to a question of jurisdiction raised by the adverse party, or by the in banc court on its own motion. Under the facts of this case, neither contention has merit.

It is true that even in the absence of a statute conferring the right to appeal, an appellate court may entertain an appeal to review a contention that an inferior appellate or trial court acted in excess of its jurisdiction.

*Pr. Geo's Co. v. American Federation,* 289 Md. 388, 398, 424 A.2d 770 (1981); *Urbana Civic v. Urbana Mobile,* 260 Md. 458, 272 A.2d 628 (1971); *Bd. of Med. Examiners v. Steward,* 203 Md. 574, 580, 102 A.2d 248 (1954); *Darrell v. Biscoe,* 94 Md. 684, 687, 51 A. 410 (1902); *Webster v. Cockey,* 9 Gill 92, 98 (1850).

> It is a well settled rule that the Court of Appeals cannot entertain an appeal from any order or judgment of the Circuit Court sitting as an appellate tribunal under special statutory authority where no right of appeal is expressly given, except in cases where the Court exceeded its jurisdiction.
>
> *Bd. of Med. Examiners v. Steward, supra,* 203 Md. at 580, 102 A.2d 248.

The rule is different, however, where the inferior appellate tribunal, possessed of authority to determine its own jurisdiction, determines that it is without jurisdiction in the case before it. Given the statutory prohibition against further appeal, that decision is final and unappealable. Paraphrasing the language of this Court in *Johnson v. Board of Zoning Appeals,* 196 Md. 400, 412, 76 A.2d 736 (1950), if there is no right of appeal from the in banc court to the Court of Special Appeals, and if the in banc court had the power to decide what it did decide, then its decision, whether right or wrong in point of law or fact, cannot be reviewed. In *Bd. of Med. Examiners v. Steward, supra,* this Court held that a court in banc has the right to decide that it is without jurisdiction in a particular case, and that a decision to that effect is final and unappealable. More recently, in *Washabaugh v. Washabaugh,* 285 Md. 393, 404 A.2d 1027 (1979), this Court re-affirmed the holding of *Bd. of Med. Examiners v. Steward,* and distinguished the case of an in banc court "attempt[ing] to commit suicide" by determining that the United States Constitution prohibited its existence. In light of the foregoing discussion, the County's first contention that the in banc court's determination of the existence of its own jurisdiction is always reviewable on appeal must fall.

■ Montgomery County also argues that it had a right to appeal the decision of the in banc court because the rule of finality is limited to questions presented to the in banc court by the moving party. Because it did not reserve or present any question concerning the jurisdiction of that court, the County contends it is not foreclosed from appealing that decision. The County relies in part upon *State Roads Comm. v. Smith*, 224 Md. 537, 168 A.2d 705 (1961). That reliance is misplaced, however, because *Smith* held only that within the time permitted for appeal and before a decision by the in banc court, a party may abandon an earlier notice of in banc appeal and perfect a direct appeal. We there said that it is the decision of the court in banc that is given conclusive effect by § 22, and not the mere initiation of the proceeding. *Id.* at 544, 168 A.2d 705. The County also cites *Merritts v. Merritts*, 299 Md. 521, 474 A.2d 894 (1984), for the proposition that a moving party in an in banc appeal may later appeal to the Court of Special Appeals. That statement is correct only in the particular context of *Merritts*, and not as a general rule. *Merritts* involved successive appeals in the same case, the second of which involved subsequent issues which were not and could not have been considered in the first appeal. Under those circumstances, we held that the first appeal to an in banc court did not bar the wholly separate and subsequent appeal to the Court of Special Appeals. In the case before us, the issue of jurisdiction was decided by the in banc court, and the special circumstances of *Merritts* are simply not relevant. We hold that the determination by the in banc court that it was without jurisdiction to entertain the appeal was final and unappealable, and that the Court of Special Appeals correctly dismissed Montgomery County's appeal.

### III.

■ Although we ordinarily do not express our views on any question raised by a dismissed appeal, we occasionally do so to resolve a matter of substantial importance. *Bd. of Med. Examiners v. Steward, supra*, 203 Md. at 581, 102

A.2d 248; *Roth v. House of Refuge*, 31 Md. 329, 334 (1869). The in banc court declared a portion of Md.Rule 2–551 unconstitutional, and we consider it in the public interest to address the correctness of that ruling.

For a period of ninety-one years following the adoption of the Constitution of 1776, the sole method of review of the decisions of the trial courts of general jurisdiction was by appeal to the Court of Appeals. Then, by the adoption of § 22 of Art. IV of the Constitution of 1867, an alternative method of appeal was provided—appeal to three judges of a circuit sitting in banc.[1]  Pursuant to that section, which exists today without substantial change, the in banc court is established as a separate appellate tribunal, and not merely as an arm of the trial court for purposes of reconsideration. *Estep v. Estep*, 285 Md. 416, 421, 404 A.2d 1040 (1979); *Buck v. Folkers, supra*, 269 Md. at 187–88, 304 A.2d 826.

The apparent purpose of the constitutional provision was to offer disappointed litigants an alternative method of review that was faster and less expensive than an appeal to the Court of Appeals, and that avoided the necessity of traveling to Annapolis. The concept of having an appeal determined by circuit judges was hardly foreign to the lawyers and litigants of that day—the Court of Appeals was comprised of the chief judge of each of the first seven Judicial Circuits and one specially elected judge from the City of Baltimore.

The provision of § 22 that was consistent with the practice and procedure of 1867, but that was later to cause confusion, was the requirement that a party desiring in banc review of a point or question enter on the record an essentially contemporaneous exception. Section 22 provides in pertinent part:

> Where any Term is held, or trial conducted by less than the whole number of said Circuit Judges, upon the decision or determination of any point, or question, by the

---

1. Section 22 applied only to the first seven Judicial Circuits and in 1867 there were three judges in each of those circuits.

> Court, it shall be competent to the party, against whom the ruling or decision is made, upon motion, to have the point, or question reserved for the consideration of the three Judges of the Circuit, who shall constitute a court in banc for such purpose; and the motion for such reservation shall be entered of record, during the sitting, at which such decision may be made....

The requirement of noting a contemporaneous exception in order to preserve a question for later appellate review was firmly ingrained in the common law. *See McCormick on Evidence* § 52, at 118–19 (E. Cleary 2d ed. 1972). The reason for the rule of contemporaneous exception, and its interaction with the additional requirement that a Bill of Exceptions be prepared and signed, were set forth by Professor Milton D. Green in *Basic Civil Procedure*, 254–55 (2d ed. 1979):

> The purpose of a Bill of Exceptions was to bring before the appellate court for review matters which otherwise would not appear on the common law record due to the fact that there were no court reporters to record the testimony and the proceedings at the trial. This was before the days of shorthand and recording devices. After the Statute of Westminster II if a litigant believed the court had erred in a ruling, he could make it a matter of record by "saving his exception." For example, if counsel had objected to a question asked of a witness and the court had overruled the objection and counsel thought the ruling was erroneous, he could say, "If the court please, I desire to save an exception to your honor's ruling." The judge was then obliged to stop the trial and call the scrivener who, with his quill pen, would make a record on parchment.... When this document was completed, it would be signed by the judge. During the course of the trial numerous exceptions might be "saved." At the conclusion of the trial they would be bound together and certified by the trial judge as the Bill of Exceptions in the case, and they would be attached to and become a part of the record on appeal. Today, with modern methods of

court reporting, this antiquated method of preserving a record has become obsolete and court rules make "exceptions" unnecessary. (footnote omitted).

The procedure in Maryland in 1867 generally followed the common law.[2] In *Thomas v. Ford*, 63 Md. 346, 348, 52 Am Rep 513 (1885), our predecessors said:

> [I]n the absence of any ... special rule upon the subject, the general rule of practice is that the exception must be taken and noted at the time of the ruling made; but the reduction of the exception to form may and should be deferred to some more convenient time after the trial, but during the same term of court, when the exception should be presented for the signature and seal of the judge.

*See also Blake v. Pitcher,* 46 Md. 453, 462–63 (1877); *Hagan v. Hendry,* 18 Md. 177, 187–88 (1862); *Roloson v. Carson,* 8 Md. 208, 225–26 (1855); 2 J. Poe, *Pleading and Practice at Law,* Pr. § 310 (4th ed. 1906). It is therefore logical and understandable that the draftsmen of § 22 included a requirement for contemporaneous exceptions as a part of an in banc appeal. The principal reason for the requirement, the absence of a stenographic record of the proceedings, was equally operative whether the appeal was to the Court of Appeals or to the in banc court. The Legislature moved promptly to regulate the procedures for in banc appeals, and by Chapter 441 of the Acts of 1868 provided, among other things, that:

> Points or questions reserved for the court in *banc* shall be taken by means of exceptions, to be reduced to writing, and signed and sealed[3] by the Judges or Judge before whom the cause may be tried, and so framed that the point or question may be fully presented as to both

---

**2.** Relief from certain of the more stringent common law requirements for Bills of Exceptions was provided in 1869 when this Court adopted rules relating to appeals. *See Blake v. Pitcher,* 46 Md. 453, 462–63 (1877).

**3.** The requirement that the trial judge affix a seal to the written exception was deleted by ch. 33 of the Acts of 1894.

law and fact in case the cause shall be transmitted to the Court of Appeals instead of being heard by the court in *banc.*

Originally codified within Article 75 of the Code, this provision was incorporated into the Maryland Rules of Procedure in 1957, as a part of Rule 510.

With the advent of court stenographers and required verbatim accounts of trial proceedings, the need for contemporaneous exceptions ceased to exist. By the adoption in 1945 of Court of Appeals Rule 17, the "unnecessary and outmoded formalit[y]" of noting exceptions to rulings or orders of the court was ended. *Elmer v. State*, 239 Md. 1, 6–9, 209 A.2d 776 (1965). Rule 17 provided that:

> Formal exceptions to the rulings or orders of the court are unnecessary; but for all purposes for which an exception has heretofore been necessary it is sufficient that a party at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor; and, if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him.

The language of Court of Appeals Rule 17 was later incorporated into Md.Rule 522, and in 1984 became part of Rule 2–517.

The modernization of appellate procedures accomplished by Court of Appeals Rule 17 and successor rules, while fully effective for purposes of ordinary appeals, had no effect on the procedure to be followed in appeals to in banc courts. Prior to 1984, Rule 510 remained in effect, specifically requiring the reservation of issues by means of exceptions. As a result, an outmoded procedure remained to unnecessarily complicate in banc appeals. Aggravating the situation was the fact that attorneys coming to the bar after 1945 were unfamiliar with the practice of noting formal exceptions to rulings or orders—a practice that had been second-nature to their predecessors. Because of the

requirement that an exception be noted of record on the day the point or question was decided, in banc appeals were essentially unavailable in those cases in which a judge filed an order with the clerk and notified the parties by mail. Moreover, there was uncertainty concerning the time within which an oral exception had to be reduced to writing and signed by the trial judge. See *Faber v. Wolfe*, 41 Md.App. 458, 397 A.2d 270 (1979), holding that an oral exception must be reduced to writing within a "reasonable time." *Compare Thomas v. Ford, supra,* 63 Md. at 348.

Aware of these problems and taking cognizance of the footnote penned by this Court in *Washabaugh, supra,* 285 Md. at 399, n. 6, 404 A.2d 1027,[4] the Rules Committee of this Court recommended substantial revision of Rule 510 so that the procedure for taking an in banc appeal would parallel, to the extent possible, the procedure in taking an appeal to the Court of Special Appeals. Rule 2–551, effective July 1, 1984, provided, in pertinent part:

When review by a court in banc is permitted by the Maryland Constitution, a party may have a judgment or determination of any point or question reviewed by a court in banc by filing a notice for in banc review within the time prescribed by Rule 1012 for a filing of an appeal.[5] Issues are reserved for in banc review by making an objection in the manner set forth in Rules 2–517 and 2–520.

McNeece does not contest the need for, or the salutary effect of, the changes accomplished by the adoption of Rule

**4.** The text of footnote 6 stated: "With regard to the reservation of a point for consideration by a court in banc, we see no impediment to the adoption of a rule by an appropriate authority providing that any duly noted objection sufficient to permit review by the Court of Special Appeals would constitute a 'reservation' within the meaning of Section 22. Such a rule, however, may require accommodation to, or amendment of, Maryland Rule 510 b."

**5.** Rule 2–551 was further amended in 1986, reducing the time for filing a motion for in banc review to ten days after the entry of judgment, or if certain post-judgment motions were filed, to ten days after disposition of those motions.

2–551. His contention is that this Court lacked the authority to make those changes. Specifically, he argues that because the procedure for reservation of points by exception was established by the Constitution, that procedure can be changed only by an amendment of the Constitution. We see it differently. Section 22 contains its own constitutional authority for procedural changes. After detailing the procedure for reservation of points that we have previously discussed, § 22 provides by its final clause that "this Section shall be subject to such provisions as may hereafter be made by Law." Section 18 of Article IV of the Maryland Constitution grants to this Court the authority to "adopt rules and regulations concerning the practice and procedure in and the administration of the appellate courts and in the other courts of this State," and provides that rules so adopted "shall have the force of law." [6]

The changes made by the adoption of Rule 2–551 are within the constitutional authority granted by §§ 22 and 18 of Article IV. The substantive right of appeal to an in banc court is in no way changed. Only the practice and procedure relating to the preservation of points for appellate review, and the time for filing an election to have the review before an in banc court, have been changed,[7] and

---

**6.** Subsection (a) of § 18 reads in its entirety:

The Court of Appeals from time to time shall adopt rules and regulations concerning the practice and procedure in and the administration of the appellate courts and in the other courts of this State, which shall have the force of law until rescinded, changed or modified by the Court of Appeals or otherwise by law. The power of courts other than the Court of Appeals to make rules of practice and procedure, or administrative rules, shall be subject to the rules and regulations adopted by the Court of Appeals or otherwise by law.

**7.** Rule 2–551 made other changes that are not involved in this appeal, and which involve procedures for the presentation of the appeal to the in banc court. Although § 22 provides that "the several Circuit Courts shall regulate, by rules, the mode and manner of presenting such points, or questions to the Court in banc," § 18 provides that "[t]he power of courts other than the Court of Appeals to make rules of practice and procedure, or administrative rules, shall be subject to the rules and regulations adopted by the Court of Appeals or otherwise by

these are matters within the rule-making authority of this Court. Reasonable regulation of the exercise of a constitutional right is permissible, provided the basic right is not impaired. *Md. Community Dev. Inc. v. S.R.C.*, 261 Md. 205, 210–14, 274 A.2d 641 (1971); *Houston v. Lloyd's*, 241 Md. 10, 14–24, 215 A.2d 192 (1965); *Knee v. City Pass Ry. Co.*, 87 Md. 623, 625–33, 40 A. 890 (1898), *Thompson v. Giordano*, 16 Md.App. 264, 271, 295 A.2d 881 (1972). The procedures established by Rule 2–551 do not impair the right to an in banc appeal and the rule is constitutional.

## CONCLUSION

Although the in banc court erred in holding that it was without jurisdiction to entertain the appeal, its decision on that point was final and unappealable, and the Court of Special Appeals correctly dismissed Montgomery County's attempt to appeal the determination of the in banc court.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY MONTGOMERY COUNTY, MARYLAND.

ELDRIDGE, Judge, concurring:

The Constitution of Maryland, in Art. IV, § 22, provides that, when a party to a circuit court case desires to have a "decision or determination of any point" reserved for consideration of a court in banc, "the motion for such reservation *shall* be entered of record, during the *sitting*, at which such decision may be made...." (Emphasis added).[1] This

---

law." By the adoption of Rule 1–102 this Court has prohibited the adoption of circuit or local rules except as to specific matters not here involved.

1. Art. IV, § 22, in its entirety provides as follows:
   "**Section 22.    Reservation of points or questions for consideration by court in banc.**
       Where any Term is held, or trial conducted by less than the whole number of said Circuit Judges, upon the decision or determination of any point, or question, by the Court, it shall be competent to the party, against whom the ruling or decision is made, upon motion, to

Court in *Costigin v. Bond,* 65 Md. 122, 3 A. 285 (1886), held that the term "sitting" meant the day the decision was made, and that "this provision of the Constitution intended to give the party taking an exception ... the whole time until the Court adjourned for the day ... to determine whether he would have his appeal to the Court *in banc,* or to the Court of Appeals." 65 Md. at 124, 3 A. 285.

The Court today does not take the position that the *Costigin v. Bond* holding was erroneous, or that the Court in *Costigin* mis-construed the constitutional intent. Rather, the majority today says that the final clause of Art. IV, § 22, stating that "this Section shall be subject to such provisions as may hereafter be made by law," authorizes this Court through its rule making power[2] to make "changes" in the constitutional requirements of § 22. The majority frankly acknowledges that "the practice and procedure relating to the preservation of points for appellate review, and the time for filing an election to have the review before an in banc court, have been changed" by Rule 2–551, and it says that these changes in the constitutional requirements are permissible.

---

have the point, or question reserved for the consideration of the three Judges of the Circuit, who shall constitute a court in banc for such purpose; and the motion for such reservation shall be entered of record, during the sitting, at which such decision may be made; and the several Circuit Courts shall regulate, by rules, the mode and manner of presenting such points, or questions to the Court in banc, and the decision of the said Court in banc shall be the effective decision in the premises, and conclusive, as against the party, at whose motion said points, or questions were reserved; but such decision in banc shall not preclude the right of Appeal, or writ of error to the adverse party, in those cases, civil or criminal, in which appeal, or writ of error to the Court of Appeals may be allowed by Law. The right of having questions reserved shall not, however, apply to trials of Appeals from judgments of the District Court, nor to criminal cases below the grade of felony, except when the punishment is confinement in the Penitentiary; and this Section shall be subject to such provisions as may hereafter be made by Law."

2. *See* Art. IV, § 18, of the Constitution.

As far as I am aware, this is the first time in the history of American constitutional jurisprudence that any appellate court has taken the position that an authorization for legislative implementation of a constitutional provision includes an authorization to contradict or amend the mandatory requirements of the constitutional provision itself. I flatly disagree with the majority's view that the judges of this Court have been empowered to amend the Maryland Constitution. While, for the reasons set forth below, I also do not agree with the practice of commenting on a constitutional issue in a case where we lack authority to decide that issue, it is perhaps fortunate that the majority's unprecedented constitutional theory is set forth as dicta. As such, it is not precedent within the principle of stare decisis.[3]

## I.

Preliminarily, I disagree with the Court's expressing any view on the constitutionality of Rule 2–551. Because Montgomery County originally sought in banc review, Article IV, § 22, bars the County's further appeal. Acknowledging this, the Court decides only that the Court of Special Appeals correctly dismissed the appeal. I fully concur with this decision. Since the Court lacked jurisdiction to reach the merits, its discussion should have ended there.

Nevertheless, the Court proceeds to the merits in this case, stating: "Although we ordinarily do not express our views on any question raised by a dismissed appeal, we occasionally do so to resolve a matter of substantial importance." In dispensing its views on Rule 2–551, however, the majority ignores the prudential limitations on the doctrine it invokes. Our cases have repeatedly admonished that only in "rare instances" and under "the most compel-

---

**3.** "Where appellate jurisdiction is absent, such statements of the appellate court [on the merits] can logically be no more than *dicta,* and it is improper for the order of the appellate court and the opinion on which the order is based, to be made conclusive as to the points discussed." *Eastgate Associates v. Apper,* 276 Md. 698, 704, 350 A.2d 661 (1976).

ling of circumstances" will the Court express its views on the merits of a dismissed appeal. *See, e.g., In re Criminal Investigation No. 1–162,* 307 Md. 674, 680–681, 516 A.2d 976 (1986); *Mercy. Hosp. v. Jackson,* 306 Md. 556, 562, 510 A.2d 562 (1986); *Reyes v. Prince George's County,* 281 Md. 279, 297, 380 A.2d 12 (1977). As pointed out in the often quoted language of Judge Hammond in *Lloyd v. Supervisors of Elections,* 206 Md. 36, 43, 111 A.2d 379 (1954), "only where the urgency of establishing a rule of future conduct in matters of important public concern is imperative and manifest, will there be justified a departure from the general rule and practice of not deciding academic questions...."

In recent years, those rare instances where the Court has expressed its views on the merits of dismissed appeals have involved either moot cases [4] or premature appeals, and not a situation where appellate jurisdiction over the case was entirely absent. In the latter situation, we have been particularly reluctant to express our views on the merits. With regard to the identical issue on which the majority now speaks, namely the constitutionality of Rule 2–551, we recently commented in a case where appellate jurisdiction was lacking: "The constitutional question decided by the circuit court, and debated by the parties before this Court, is obviously important for future cases where circuit court in banc review may be sought. Nevertheless, we shall not be able to reach that question in this case." *Walbert v. Walbert,* 310 Md. 657, 661, 531 A.2d 291 (1987). Most appropriate is Judge Smith's statement for the Court in *Lewis v. Lewis,* 290 Md. 175, 179, 428 A.2d 454 (1981): "We may not decide the issue presented if we have no jurisdiction to decide it, notwithstanding the importance of the issue."

---

4. The normal rule against expressing our views in moot cases is based upon policy grounds; it is not a constitutional limitation upon our jurisdiction. *Reyes v. Prince George's County,* 281 Md. 279, 291–299, 380 A.2d 12 (1977).

As the majority explains, it is the Constitution itself, in Art. IV, § 22, which prohibits the exercise of jurisdiction by the Court of Special Appeals or this Court over the decision of the court in banc. For this Court to render an opinion on the holding of the court in banc, at least absent the greatest urgency, is in derogation of the constitutional limitation upon our jurisdiction. *Cf., Reyes v. Prince George's County, supra*, 281 Md. at 291–298, 380 A.2d 12.

In addition, the majority's statements concerning the constitutionality of Rule 2–551 ignore this Court's established policy of reaching constitutional issues only when necessary. *Allgood v. State*, 309 Md. 58, 82, 522 A.2d 917 (1987); *Mercy Hosp. v. Jackson, supra*, 306 Md. at 565, 510 A.2d 562, and cases there cited.

It is questionable whether any degree of urgency and importance justifies this Court's expressing its view on a constitutional issue where there is no appellate jurisdiction under the Constitution.[5] Assuming, however, that such expression may be justified under sufficiently urgent circumstances, the instant case does not fall within that category.

This is not a case like *Board of Medical Examiners v. Steward*, 203 Md. 574, 102 A.2d 248, 251 (1954), or *Roth v. House of Refuge*, 31 Md. 329 (1869), cited by the majority. Those are the two cases in which this Court, although without appellate jurisdiction to do so,[6] did express its view on the merits of constitutional issues. Both *Roth* and *Steward*, however, involved a lack of statutory appellate jurisdiction in this court over the type of case involved regardless of which party prevailed below. Thus the likeli-

---

**5.** For example, if there is a sufficient public urgency or necessity, will the Court now comply with a request by the Governor and General Assembly for an advisory opinion on an extremely important constitutional question? *See* the discussion in *Reyes v. Prince George's County, supra*, 281 Md. at 291–298, 380 A.2d 12.

**6.** The lack of appellate jurisdiction in those cases, however, was not rooted in the Constitution itself.

hood that the court would be able to reach the constitutional question in a similar case was diminished. Moreover, the lower court's ruling in each of those cases had an important and immediate adverse public impact. In *Roth*, the trial court had held unconstitutional statutory provisions authorizing the commitment and detention of certain types of persons by justices of the peace and the House of Refuge. In *Steward*, under the circuit court's ruling, the Board of Medical Examiners would have had to have been reconstituted.

The urgency present in *Roth* and *Steward* does not exist in the case at bar. Under Article IV, § 22, of the Constitution, this Court is precluded from hearing appeals from courts in banc only if, as in this case, the appellant from the in banc court is the party who initially sought in banc review. In all other situations, the Court of Special Appeals and this Court will have appellate jurisdiction. In numerous instances this Court has properly reviewed cases decided by courts in banc. *See, e.g., O'Connor v. Moten*, 307 Md. 644, 516 A.2d 593 (1986); *Dean v. State*, 302 Md. 493, 489 A.2d 22 (1985); *Estep v. Estep*, 285 Md. 416, 420, 404 A.2d 1040, 1042 (1979); *Buck v. Folkers*, 269 Md. 185, 304 A.2d 826, 828 (1973); *Costigin v. Bond, supra,* 65 Md. 122, 3 A. 285. Furthermore, the issue concerning the constitutionality of Rule 2–551 is likely to arise in many in banc cases. Consequently, it is probable that a case will soon arise within our appellate jurisdiction presenting the issue of Rule 2–551's constitutionality.

Moreover, the ruling of the in banc court in this case does not have the immediate public impact that the lower court decisions in *Roth* and *Steward* had. Until this Court decides the question of Rule 2–551's validity, parties can fully protect their rights to in banc appeals by adhering to the procedure set forth in Art. IV, § 22, of the Constitution. And if a party fails to comply with this procedure, he can still take an appeal directly to the Court of Special Appeals. As pointed out by Judge J. Dudley Digges for the Court in *Washabaugh v. Washabaugh,* 285 Md. 393, 408, 404 A.2d

1027 (1979), "[Art. IV,] section 22, when it is applicable, has minimal impact upon the appeal process as all dissatisfied litigants ... have the option of a normal appeal to the Court of Special Appeals...."

Merely because it may be convenient to some litigants for us to comment upon the constitutionality of Rule 2–551 at this time does not justify our doing so. Rather we should heed the words of Chief Judge Ogle Marbury in *State v. Haas*, 188 Md. 63, 66, 51 A.2d 647, 648 (1947):

"It was not the intention of the people of this State in establishing this Court through the several constitutional enactments that it should write treatises on the law. Its duty is to decide *bona fide* cases...."

## II.

I shall comment upon the constitutionality of Rule 2–551 only because the majority of the Court has decided to do so.

Initially, the majority misstates the requirements of Art. IV, § 22, of the Constitution, as interpreted by this Court in *Costigin v. Bond, supra.* According to the majority opinion, "[t]he provision of § 22 ... that was later to cause confusion, was the requirement that a party desiring in banc review of a point or question enter on the record an essentially contemporaneous exception." The majority goes on to discuss the common law requirement of an exception in order to preserve a question for appellate review and then states: "It is therefore logical and understandable that the draftsmen of § 22 included a requirement for contemporaneous exceptions as a part of an in banc appeal." The majority seems to conclude that the "modernization" of appellate procedure, with the abolition of "exceptions," has rendered the requirements of § 22 obsolete.

Contrary to the majority's statements, Art. IV, § 22, does not deal with "exceptions" or with what is generally necessary to preserve a matter for appellate review. The word "exception" is nowhere contained in § 22. As the majority's opinion explains, lawyers in 1867 and the draftsmen of

§ 22 well understood the requirement of an "exception" to preserve a matter for appellate review. If the framers of § 22 had intended to constitutionalize this need for an exception, they would have used the word "exception" in § 22.

The pertinent language of § 22 is that "the motion for such reservation shall be entered of record, during the sitting, at which such decision may be made...." Instead of dealing with what is necessary for appellate preservation, this language relates to the time for electing review by a court in banc. Regardless of whether an "exception" or an "objection" or an "argument" or no action is required for appellate preservation of a point, § 22 merely requires that, in order to have review by a court in banc, a motion to that effect be entered "during the sitting, at which decision may be made." If a party desires to appeal to a regular appellate court instead of a court in banc, he need do nothing as far as § 22 is concerned. Nevertheless, in 1867, such party most likely would have been required to note an exception if he desired review by the Court of Appeals.

The distinction between the requirements of Art. IV, § 22, and an exception, was clearly understood by the Court in *Costigan v. Bond,* when it stated (65 Md. at 124, 3 A. 285):

"The exception to a ruling must properly be taken as soon as the ruling is made but this provision of the Constitution intended to give the party taking an exception the entire sitting of the Court (that is the whole time until the Court adjourned for the day) to determine whether he would have his appeal to the Court *in banc,* or to the Court of Appeals. It would be a very improvident construction of this section to hold that a party might have the whole term of the Court to make up his mind; and we think it is not warranted by the plain meaning of the words."

Since § 22 relates to the time for an election between appellate courts, and not the matter of appellate preservation, it is no more obsolete today than it was in 1867.[7]

If the majority were convinced that the Court in *Costigin v. Bond* erroneously interpreted Art. IV, § 22, the Court could overrule *Costigin.* I would, however, strongly dissent from such action. As this Court has pointed out, what became Art. IV, § 22, was proposed at the Constitutional Convention of 1867 by Delegate Richard H. Alvey of Washington County. *See* the discussion in *Dean v. State, supra,* 302 Md. at 496–497, 489 A.2d 22, and *Washabaugh v. Washabaugh, supra,* 285 Md. at 396, 404 A.2d 1027. Delegate Alvey later became one of the most distinguished judges ever to sit on this Court. He sat in *Costigin v. Bond* and joined the Court's opinion. Moreover, the *Costigin* interpretation of § 22 had been consistently recognized and adhered to by the General Assembly and this Court, until the unfortunate adoption of Rule 2–551(a) in 1984. Art. IV, § 22, was re-adopted by the electorate of Maryland in 1978, without any change in the *Costigin* interpretation of that provision.

Although I would not concur with overruling *Costigin v. Bond,* such action would be less drastic than the dicta embraced by the majority today.

Apparently unwilling to overrule *Costigin,* the majority instead asserts that § 22 "contains its own constitutional authority for procedural changes." In support of this superficially innocuous statement, the majority observes that, by its terms, § 22 is "subject to such provisions as may hereafter be made by law." The majority concludes that, by virtue of this grant, coupled with the Court's general rule-making authority, this Court has the power not merely

---

7. Like the majority opinion, the dicta contained in footnote 6 in *Washabaugh v. Washabaugh,* 285 Md. 393, 399, 404 A.2d 1027 (1979), confuses appellate preservation with the election requirement of Art. IV, § 22. That footnote suggested that a "duly noted objection" might by rule be deemed a "reservation" under § 22. The majority today, however, goes far beyond the suggestion in the *Washabaugh* footnote. The Court now purports to dispense with the need for any action on the day of the ruling or decision.

to clarify, develop, or effectuate the terms of § 22 but also to contradict or amend them. I cannot agree.

The Maryland Rules are legislative in nature. *Ginnavan v. Silverstone,* 246 Md. 500, 504–505, 229 A.2d 124, 126 (1967). Therefore, like all legislation, the Maryland Rules are invalid unless consistent with the Constitution. *See Washabaugh v. Washabaugh, supra,* 285 Md. at 411, 404 A.2d 1027; *Laurel Canning Co. v. B. & O. R.R.,* 115 Md. 639, 642, 81 A. 126, 127 (1911). In interpreting § 22 as authorizing this Court to adopt rules that contradict § 22's very terms, however, the majority exempts such rules from the requirement of consistency with the Constitution. In effect, the majority concludes that a constitutional provision empowering this Court or the Legislature to implement a constitutional section, constitutes authority to amend the Constitution.

The majority's astonishing conclusion has a number of consequences. First, as to rules adopted under § 22, judicial review becomes superfluous: no rule thus adopted could be unconstitutional. More important, if the power to implement a constitutional provision includes the power to contradict the terms of that provision, the consequences for Maryland law are unsettling. For example, Article I, § 3, empowers the General Assembly "to provide by suitable enactment for voting by qualified voters of the State of Maryland ... who are absent at the time of any election in which they are entitled to vote." Could the General Assembly thereby provide for absentee voting by voters who are neither "qualified" nor "entitled to vote"? Article II, § 1B, provides that "[e]ach candidate who shall seek nomination for Governor, under any method provided by law for such nomination, ... shall at the time of filing for said office designate a candidate for Lieutenant Governor...." In regulating the procedure for obtaining a gubernatorial nomination, could the General Assembly require a candidate not to designate a candidate for Lieutenant Governor?

No court, to the best of my knowledge, has ever held that the power to implement a constitutional provision includes

the power to contradict the terms of that provision. In fact, in an analogous situation, the Supreme Court reached the opposite conclusion. *See Katzenbach v. Morgan,* 384 U.S. 641, 648–653, 86 S.Ct. 1717, 1722–1725, 16 L.Ed.2d 828 (1966).

The majority, in an apparent effort to minimize the scope of its singular view of constitutional adjudication, emphasizes that the Art. IV, § 22, requirement, which is purportedly amended by Rule 2–551, is a procedural provision and that "Rule 2–551 do[es] not impair the right to an in banc appeal...." Of course, all of Art IV, § 22, is procedural. In fact, much of the Maryland Constitution—particularly the Declaration of Rights—is made up of procedural requirements. A noteworthy feature of constitutions in this Country is the extent which they deal with process rather than substantive political matters. Consequently, the apparent limitation placed by the majority, with regard to its view of judicial power to amend the Maryland Constitution, does not significantly minimize the effect of the majority's position.

For all of the above reasons, I disagree with the majority's opinion in this case. I concur in the result only.

Judges SMITH and COUCH have authorized me to state that they concur with the views expressed herein.