47 A.3d 613

**Alan Sanford REMSON**

v.

**Karen KRAUSEN f/k/a Karen Remson.**

**No. 2187, Sept. Term, 2010.**

Court of Special Appeals of Maryland.

June 28, 2012.

**56**

Mark W. Oakley (Oakley & Eckstein, LLC, on the brief) Rockville, MD, for appellant.

No brief submitted.

Panel: WOODWARD, WRIGHT, and HOTTEN, JJ.

HOTTEN, J.

On September 25, 2008, appellee, Karen Krausen, f/k/a as Karen Remson, filed a complaint for limited divorce in the Circuit Court for Montgomery County. During the proceedings, the parties signed a consent order enjoining appellant, Alan Sanford Remson, from contacting appellee. A contempt order was subsequently issued when appellant violated the consent order. Appellant thereafter submitted a motion to set aside the contempt order. During the pendency of that motion, appellant, through new counsel, submitted a motion to withdraw the motion to set aside. Subsequently, the motion to set aside was granted. The motion to withdraw was granted soon thereafter. Appellant, again through new counsel, vigorously attempted to demonstrate that the motion to withdraw was improperly granted. An in banc panel reviewed the issue and concluded that the circuit court did not abuse its discretion in granting the motion to withdraw. Appellant subsequently filed a motion to alter or amend, or in the alternative, motion to strike the contempt order pursuant to Md. Rule 2–535(b).[1] The in banc panel denied the motion and appellant noted an appeal.[2] For the reasons that follow, we dismiss the pending appeal.

---

1. Md. Rule 2–535(b) states that "[o]n motion of any party filed at any time, the court may exercise revisory power and control over the judgment in case of fraud, mistake, or irregularity."

2. Appellant presents the following questions:

## BACKGROUND

On September 6, 2008, the District Court for Montgomery County issued a temporary protective order against appellant. A few weeks later, appellee filed a complaint for a limited divorce. Appellee then filed an emergency motion for injunctive relief, arguing that appellant engaged "in an escalating course of abusive and harassing conduct" that made her fearful. Additionally, appellee alleged that appellant threatened her "livelihood, peace of mind, and safety." Appellee, in particular, posited that appellant repeatedly called her despite requests to stop, he was verbally abusive during the phone calls, and he repeatedly sent her email and text messages despite numerous requests to stop. Appellant countered that the injunction was unnecessary because he had no intention of initiating future communication. Moreover, appellant averred that the allegations were untrue and exaggerated.

On November 3, 2008, appellant submitted a "NO CONTACT AGREEMENT" ("Agreement") to the circuit court. The Agreement stated that appellant would not directly or indirectly contact appellee, and that he would refrain from communicating with mutual friends about her. Thereafter, the Agreement provided:

> This agreement will be strictly adhered to and if violated, and proof of a violation is forthcoming such as phone records, computer email printouts or a statement from a mutual friend, the attached Order Granting Injunctive Relief shall be entered with the Court and [appellant] shall be liable for a portion of [appellee's] attorney['s] fees which correspond to a breach of this Agreement.

1. Did the circuit court abuse its discretion when it denied Appellant's motion to vacate the order granting injunctive relief as facially invalid for procedural irregularity because it was not issued in compliance with Rule 15–501 *et seq.*?
2. Should the Appellant's contempt finding be vacated if the injunctive order on which it is based is void?
3. In the alternative, did the [c]ircuit [c]ourt err when it denied Appellant's motion to dissolve the injunction without holding a hearing and without making findings to support continuation of the injunction?

On November 7, 2008, the parties signed a consent order granting injunctive relief. The order provided:

Upon consideration of [appellee's] Motion for Injunctive Relief filed in the above-captioned matter and for good cause shown, it is thereupon this 7 day of November, 2008, by the Circuit Court for Montgomery County, Maryland,

ORDERED, that [appellant], is hereby enjoined from contacting [appellee] in any way, either directly or indirectly, including but not limited to, telephoning, emailing, or texting [appellee]; and it is further;

ORDERED, that should [appellant] fail to abide by this Order, he shall be liable to [appellee] for all attorney's fees and costs for the preparation of the Motion for Injunctive Relief and Order and all sanctions necessary to enforce this Order.

About thirteen days later, appellee filed a motion for contempt, asserting that appellant had contacted her at work. Appellant countered that the allegation was untrue. Specifically, he posited that he was driving home from the doctor when the incident was alleged to have occurred.[3] Appellant then noted that he had no intention of violating the injunction because he would lose his security clearance and employment opportunities. After considering the arguments, the circuit court found appellant to be in contempt and sentenced him to thirty days of incarceration. The sentence was suspended, predicated on future compliance and payment of $2500 in attorney's fees.

On September 17, 2009, appellant submitted a motion to set aside the contempt order, noting that he had complied with the provisions of the injunction since June 23, 2009. Appellee opposed, positing that there was no reason to set aside the order. Not long after, appellant retained new counsel, who submitted a motion to withdraw the motion to set aside. Days later, the motion to set aside the contempt order was granted.

---

3. Appellant provided cell phone records to demonstrate that he did not call appellee.

The motion to withdraw was then granted, thereby vacating the motion to set aside, which in turn, resulted in the continued viability of the contempt order.

On December 3, 2009, through new counsel, appellant submitted a motion to vacate the order granting the withdrawal. In that motion, appellant argued that the motion to withdraw was "inadvertently filed . . ." because he and previous counsel "did not effectively communicate. . . ." Appellant then requested that the circuit court exercise its revisory powers and reinstate the order that set aside the contempt order. Appellee opposed, positing that the court entered the order in error. The motion was denied and appellant subsequently filed a motion to alter or amend, reiterating the same arguments. Again, the circuit court denied the motion. Appellant thereafter requested an in banc panel review to determine whether the circuit court abused its discretion in granting the motion to withdraw.

After the in banc panel concluded that the circuit court did not abuse its discretion, appellant filed a "Motion To Reconsider, Alter Or Amend Order Dated July 9, 2010; Or, In The Alternative, Motion To Vacate Contempt Order Entered June 23, 2009 Pursuant To Rule 2-535(b)." Appellant argued that the contempt order should be vacated because injunctive relief was not properly issued. Namely, appellant averred that it was impossible to determine whether the injunction was permanent or temporary; the reasons for granting the injunction were not properly placed on the record; the reasons for the relief were not stated in writing; there was no reference to harm; and no hearing was held. Appellant then posited that the contempt order should be vacated because there was an "irregularity" in the process of granting the injunction. Appellee opposed, arguing that the in banc panel lacked authority to vacate the contempt order. Appellee also posited that the validity of the injunction was not before the panel. Appellee, nevertheless, averred that the alleged errors must be disregarded because the parties consented to the injunctive relief. In an order dated October 14, 2010, the in banc panel

**60**

denied appellant's motion without explanation. Appellant thereafter noted an appeal.

## DISCUSSION

An in banc panel review has been endearingly referred to as "the poor person's appeal." *Washabaugh v. Washabaugh,* 285 Md. 393, 396, 404 A.2d 1027 (1979) (citing *Roth v. The House of Refuge,* 31 Md. 329, 333 (1869)) (internal quotations omitted). This moniker stemmed from the sentiment that Article IV, § 22 of the Maryland Constitution was enacted "to offer disappointed litigants an alternative method of review that was faster and less expensive than an appeal to the Court of Appeals, and that avoided the necessity of traveling to Annapolis." *Montgomery County v. McNeece,* 311 Md. 194, 201, 533 A.2d 671 (1987). Despite the alternative nature of an in banc panel review, its decision "is conclusive, final, and non-appealable by the party who sought the in banc review, and as to that party a reservation of points or questions for consideration by a court in banc is a substitute for an appeal to the Court of Special Appeals." *Id.* at 198, 533 A.2d 671 (citing *Buck v. Folkers,* 269 Md. 185, 186–87, 304 A.2d 826 (1973); *Bd. of Med. Exam'rs v. Steward,* 207 Md. 108, 111–12, 113 A.2d 426 (1955); *Costigin v. Bond,* 65 Md. 122, 3 A. 285 (1886)). Put another way, Article IV, § 22 constitutionally proscribes an appeal from a decision of an in banc panel against the party that brought the review. *See State Roads Comm'n v. Smith,* 224 Md. 537, 544, 168 A.2d 705 (1961).

Because the pending appeal stemmed from an in banc panel review that appellant initiated, we instructed him to show cause "why this appeal should not be dismissed as an impermissible appeal from the decision of an in banc panel of the circuit court." Appellant responded, arguing that the issues on appeal were distinct from those addressed by the in banc panel. Appellant, in particular, averred that the panel considered whether the circuit court abused its discretion in granting a motion to withdraw, whereas the pending appeal concerned whether the circuit court abused its discretion in

denying a motion to vacate, and whether it erred in denying the motion to dissolve the injunction.

We recognize that the in banc panel reviewed whether the circuit court abused its discretion in granting the motion to withdraw. However, the record contradicts the position that the circuit court considered appellant's request to dissolve the injunction and vacate the contempt order. Each issue was first raised in appellant's "Motion To Reconsider, Alter Or Amend Order Dated July 9, 2010; Or, In The Alternative, Motion To Vacate Contempt Order Entered June 23, 2009 Pursuant To Rule 2–535(b)." Appellant noted an appeal once that motion was denied. At that point, the issues were never presented to the circuit court. Accordingly, for the reasons that follow, we dismiss the pending appeal.

## I.

"When interpreting constitutional provisions, we generally employ the same rules of construction that are applicable to the construction of statutory language." *Davis v. Slater*, 383 Md. 599, 604, 861 A.2d 78 (2004) (citing *Fish Market Nominee Corp. v. G.A.A., Inc.*, 337 Md. 1, 8, 650 A.2d 705 (1994); *Brown v. Brown*, 287 Md. 273, 277, 412 A.2d 396 (1980); *Kadan v. Bd. of Supervisors of Elections of Baltimore County*, 273 Md. 406, 414, 329 A.2d 702 (1974); *The New Cent. Coal Co. v. The George's Creek Coal & Iron Co.*, 37 Md. 537 (1873)). One of the cardinal rules of interpretation is that a court should not reach a meaning beyond the Constitution unless the relevant section is ambiguous. *Bernstein v. State*, 422 Md. 36, 43 (2011); *see also Reed v. McKeldin*, 207 Md. 553, 560, 115 A.2d 281 (1955). ("It is a cardinal rule of construction that where the text of a constitutional provision is not ambiguous, the Court, in construing it, is not at liberty to search for its meaning beyond the Constitution itself.").

"Like construing a statute, to ascertain the meaning of a constitutional provision ... we first look to the normal, plain meaning of the language." *Davis*, 383 Md. at 604, 861 A.2d 78 (citing *Fish Market*, 337 Md. at 8, 650 A.2d 705;

*Luppino v. Gray,* 336 Md. 194, 204 n. 8, 647 A.2d 429 (1994); *Rand v. Rand,* 280 Md. 508, 511, 374 A.2d 900 (1977); *Baltimore Gas & Elect. Co. v. Bd. of Comm'rs of Calvert County,* 278 Md. 26, 31, 358 A.2d 241 (1976); *Johnson v. State,* 360 Md. 250, 265, 757 A.2d 796 (2000)). When that language is clear and unambiguous, we need not review more than the words of the constitutional provision. *Id.* at 604–05, 861 A.2d 78 (citing *Fish Market,* 337 Md. at 8, 650 A.2d 705; *Rand,* 280 Md. at 511, 374 A.2d 900; *Johnson,* 360 Md. at 265, 757 A.2d 796). However, we note that our "goal . . . is always to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision, be it statutory, constitutional or part of the Rules." *Id.* at 605, 861 A.2d 78 (citing *Morris v. Prince George's County,* 319 Md. 597, 603–04, 573 A.2d 1346 (1990) (citing *Dept. of the Environment v. Showell,* 316 Md. 259, 270, 558 A.2d 391 (1989); *Harford County v. Edgewater P'ship,* 316 Md. 389, 397, 558 A.2d 1219 (1989); *Nelson v. State,* 315 Md. 62, 66, 553 A.2d 667 (1989))).

Article IV, § 22 originated at the Constitutional Convention of 1867. *See Bienkowski v. Brooks,* 386 Md. 516, 531, 873 A.2d 1122 (2005). There, Delegate Andrew K. Syester expressed that " 'there was a large class of people humble in life, with but scanty means, struggling on with adversity, and misfortune too poor [to] pay the uncommon fees necessary to be paid counsel in prosecuting appeals.' " *Id.* at 532, 873 A.2d 1122 (quoting John J. Connolly, *Maryland's Right of In Banc Review,* 51 Md. L.Rev. 434, 452 (1992) (quoting *The Hagerstown Mail,* August 2, 1867, at 2)). Stated another way, Delegate " 'Syester proposed that the three Judges [of a circuit] should also hold a court of revision in each district, and to this the poor man could take an appeal when he could not afford to go up to the Court of Appeals of the State.' " *Id.* (quoting Connolly, *Maryland's Right of In Banc Review,* at 451 (quoting *American & Commercial Advertiser,* July 20, 1867, at 4)).

Article IV, § 22, in the following form, was adopted at the 1867 Constitutional Convention:

4863

Where any Term is held, or trial conducted by less than the whole number of said Circuit Judges, upon the decision, or determination of any point, or question, by the Court, it shall be competent to the party, against whom the ruling or decision is made, upon motion, to have the point, or question reserved for the consideration of the three Judges of the Circuit, who shall constitute a Court in *banc* for such purpose; and the motion for such reservation shall be entered of record, during the sitting, at which such decision may be made; and the several Circuit Courts shall regulate, by rules, the mode and manner of presenting such points or questions to the Court in *banc*, and the decision of the said Court in *banc* shall be the effective decision in the premises, and conclusive, as against the party, at whose motion said points or questions were reserved; but such decision in *banc* shall not preclude the right of Appeal, or writ of error to the adverse party, in those cases, civil or criminal, in which appeal, or writ of error to the Court of Appeals may be allowed by Law. The right of having questions reserved shall not, however, apply to trials of Appeals from judgments of Justices of the Peace,[4] nor to criminal cases below the grade of felony, except when the punishment is confinement in the Penitentiary; and this Section shall be subject to such provisions as may hereafter be made by Law.

*Id.* at 535–36, 873 A.2d 1122.

In *Costigin*, 65 Md. at 123–124, 3 A. 285, the Court of Appeals first addressed Article IV, § 22, and articulated:

The twenty-second section of the fourth Article of the Constitution gave a new right of appeal. When a trial is conducted by less than the whole number of the Judges of a Circuit Court, it is competent for a party against whom a decision is made to have the point or question reserved for the consideration of the three Judges *in banc;* and their decision is to be conclusive against him. This proceeding is

---

4. In 1978, a constitutional amendment was enacted to change "Justices of the Peace" to "District Court." *Bienkowski,* 386 Md. at 536, 873 A.2d 1122.

in substitution of an appeal to the Court of Appeals, and makes a considerable alteration in the law on this subject. The change is not to be extended by construction beyond the terms of the Constitution. It is provided that the motion for a reservation of the point or question decided shall be entered of record during the sitting at which the decision may be made. The word *"sitting"* is not synonymous with *"term"* of the Court. The exception to a ruling must properly be taken as soon as the ruling is made; but this provision of the Constitution intended to give the party taking an exception the entire sitting of the Court (that is the whole time until the Court adjourned for the day) to determine whether he would have his appeal to the Court *in banc*, or to the Court of Appeals. It would be a very improvident construction of this section to hold that a party might have the whole term of the Court to make up his mind; and we think it is not warranted by the plain meaning of the words.

Approximately one-hundred years later, the Court of Appeals in *Washabaugh,* 285 Md. at 397–99, 404 A.2d 1027, succinctly summarized Article IV, § 22:

If, at a trial conducted by less than all the circuit judges who are regularly authorized to sit in the Maryland judicial circuit where the proceedings are held, a decision on any point or question is rendered against a party, that litigant, when it is constitutionally permitted, may reserve the question or point for "the three Judges of the Circuit," who "constitute a court in banc." Md. Const., Art. IV, § 22. This "reservation" must be entered upon the record during the "sitting" of the circuit court at which the questioned decision was made, *id.,* the term "sitting" having been interpreted by this Court as being the day during which the determination is rendered. [*Costigin,* 65 Md. at 124, 3 A. 285].

(Footnotes omitted).

 In 2006, the Legislature updated and rewrote Article IV, § 22, *see* Chapter 421 of the 2006, without substantive change, as follows:

Where any trial is conducted by less than three Circuit Judges, upon the decision or determination of any point, or question, by the Court, it shall be competent to the party, against whom the ruling or decision is made, upon motion, to have the point, or question reserved for the consideration of three Judges of the Circuit, who shall constitute a court in banc for such purpose; and the motion for such reservation shall be entered of record, during the sitting at which such decision may be made; and the procedure for appeals to the Circuit Court in banc shall be as provided by the Maryland Rules. The decision of the said Court in banc shall be the effective decision in the premises, and conclusive, as against the party at whose motion said points, or questions were reserved; but such decision in banc shall not preclude the right of Appeal by an adverse party who did not seek in banc review, in those cases, civil or criminal, in which appeal to the Court of Special Appeals may be allowed by Law. The right of having questions reserved shall not, however, apply to trials of Appeals from judgments of the District Court, nor to criminal cases below the grade of felony, except when the punishment is confinement in the Penitentiary; and this Section shall be subject to such provisions as may hereafter be made by Law.

Although Article IV, § 22 was slightly altered, the section maintained that "upon the decision, or determination of any point, or question" by a circuit court, "it shall be competent to the party, against whom the ruling or decision is made, upon motion, to have the point, or question reserved for the consideration" by an in banc panel of three circuit court judges. We believe that this language—and the cases that previously interpreted Article IV, § 22—*clearly* demonstrate that an in banc panel's jurisdiction is predicated on a decision of a circuit court being reserved for review. Implicit in this requirement is that an issue must be presented to the circuit court before an in banc panel can conduct a review. Stated another way, "when no appeal from a circuit court order could be taken to the Court of Special Appeals ..., then no appeal can be taken

to a court in banc." *Bd. of License Comm'rs of Montgomery County v. Haberlin*, 320 Md. 399, 406, 578 A.2d 215 (1990).

In *Sheeler v. Handelman*, 212 Md. 152, 161, 129 A.2d 78 (1957), the Court of Appeals recognized that Article IV, § 22 prohibits an in banc panel from sitting when no judgment or order has been appealed. There, Mayer Handelman, A. Leonard Mogol, and Donna Handelman ("applicants") appealed the Board of Liquor License Commissioners for Baltimore County's ("Board") decision not to issue a liquor license. *Id.* at 153–54, 129 A.2d 78. Once the appeal was noted, the administrative record was submitted with a letter indicating that the Board's opinion was enclosed. *Id.* at 155, 129 A.2d 78. The lower court reviewed the case and affirmed the Board's decision. *Id.* at 155–56, 129 A.2d 78. In its decision, the court specifically acknowledged that the Board's opinion was absent from the record. *Id.* at 156, 129 A.2d 78. Approximately two weeks later, the applicants petitioned the court to rehear the case, asserting that another member of the bench reversed a similar case where the Board's opinion was absent from the record. *Id.* A hearing was scheduled and the case was reopened. *See id.* at 156–57, 129 A.2d 78. An in banc panel review was subsequently requested. *Id.* at 157, 129 A.2d 78. After recognizing that reopening the case was akin to granting a new trial, the Court of Appeals held that an in banc panel review was unnecessary because it "is a form of appeal and . . . there can be no appeal from a non-existent judgment or order." *Id.* at 161, 129 A.2d 78.

In the case *sub judice*, appellant submitted a "Motion To Reconsider, Alter Or Amend Order Dated July 9, 2010; Or, In The Alternative, Motion To Vacate Contempt Order Entered June 23, 2009 Pursuant To Rule 2–535(b)." Appellant, in particular, requested a reconsideration of the in banc panel's decision, dissolution of the injunction, and to vacate the contempt order. Obviously, the in banc panel was permitted to review a motion for reconsideration of their decision. However, because neither issue was decided by the circuit court, the panel was not permitted to consider appellant's request to dissolve the injunction and vacate the contempt order.

■■■ It is well settled that an in banc panel is a tribunal that exercises appellate jurisdiction. *Bienkowski,* 386 Md. at 553, 873 A.2d 1122; *Haberlin,* 320 Md. at 406, 578 A.2d 215; *Dabrowski v. Dondalski,* 320 Md. 392, 396, 578 A.2d 211 (1990); *McNeece,* 311 Md. at 201, 533 A.2d 671; *Langston v. Langston,* 136 Md.App. 203, 218–19, 764 A.2d 378 (2000); *Azar v. Adams,* 117 Md.App. 426, 430–31, 700 A.2d 821 (1997); *Green v. State,* 96 Md.App. 601, 606, 626 A.2d 975 (1993). The record is unclear whether the in banc panel addressed the merits of appellant's request to dissolve the injunction and vacate the contempt order, or whether it concluded that the issues were not properly before it. If the in banc panel considered the merits of appellant's requests, then *Handelman* suggests that it exceeded its jurisdiction. Nevertheless, because we are unsure whether the panel addressed the merits, we cannot definitively state whether it exceeded its jurisdiction.

In *Estep v. Estep,* 285 Md. 416, 404 A.2d 1040 (1979), the Court of Appeals dismissed an appeal from an in banc panel because its determination was premature. There, the lower court awarded Donald L. Estep ("Donald") custody of the four children born during his marriage to Brenda J. Matt (formerly Estep) ("Brenda"). *Id.* at 418, 404 A.2d 1040. The award was conditioned on the children residing with their paternal grandparents in Virginia. *Id.* A couple years later, the eldest son moved to Brenda's residence in Maryland with the consent of all parties. *Id.* Brenda then remarried and filed a motion for modification of custody. *Id.* at 418–19, 404 A.2d 1040. Donald opposed, arguing that the forum was inconvenient and that the court lacked jurisdiction under the Uniform Child Custody Jurisdiction Act. *Id.* at 419, 404 A.2d 1040. Additionally, he filed a cross-petition for modification, asserting that Brenda should be ordered to provide support toward the three children living with the paternal grandparents. *Id.* The lower court denied Brenda's motion for modification with regard to the three children living with the paternal grandparents, holding that it lacked jurisdiction, and that the forum was inconvenient. *Id.*

An in banc panel reviewed the decision—although Donald's cross-petition and Brenda's modification request as to the eldest son was pending—and reversed. *Id.* Donald noted an appeal, *id.* at 420, 404 A.2d 1040, and we dismissed it. *Id.* at 417, 404 A.2d 1040. The Court of Appeals concluded that the appeal was ripe for review because Article IV, § 22 does not prohibit an appeal of an in banc decision from the nonmoving party. *Id.* at 420–21, 404 A.2d 1040. Nevertheless, the Court declined to address the substance of the appeal because the panel lacked jurisdiction to render its decision. *Id.* at 421–22, 404 A.2d 1040. Most notably, the Court of Appeals stated that the in banc panel's determination was premature because there were outstanding motions regarding custody. *Id.* at 423, 404 A.2d 1040.

After appellant filed the "Motion To Reconsider, Alter Or Amend Order Dated July 9, 2010; Or, In The Alternative, Motion To Vacate Contempt Order Entered June 23, 2009 Pursuant To Rule 2–535(b)," his request to dissolve the injunction and vacate the contempt order became outstanding issues before the circuit court. Admittedly, the fact these issues were not properly before the in banc panel could have flown under the radar because appellant's requests were couched in the same motion as the reconsideration request. Nevertheless, at minimum, the panel should have discussed the situation and held a hearing to determine the appropriate course of action. Instead, because the court denied appellant's motion without explanation, the record is unclear whether the panel addressed the merits of appellant's requests or concluded that those issues were not properly before it. This could have been avoided had appellant submitted a motion for reconsideration to the in banc panel, and a separate motion concerning the other requests to the circuit court. Notwithstanding, if the panel decided the merits of appellant's request to dissolve the injunction or vacate the contempt order, *Estep* indicates that it prematurely addressed these issues.

Additionally, we believe *Merritts v. Merritts,* 299 Md. 521, 474 A.2d 894 (1984), is noteworthy. There, a divorce decree was entered and the lower court identified three parcels of

property that were marital property; apportioned the value of the properties; declared an interest in them; retained jurisdiction for a reasonable time period; and awarded Hilda W. Merritts ("Hilda") alimony that reduced over a period of two years and ceased when Jack R. Merritts ("Jack") retired. *Id.* at 523–24, 474 A.2d 894. "Feeling aggrieved," Hilda reserved ten issues for review by an in banc panel. *Id.* at 524, 474 A.2d 894. The panel "generally affirmed" the provisions of the divorce decree, but reversed and remanded the alimony award. *Id.* at 525, 474 A.2d 894. The court thereafter revised the award of alimony, ordered the sale in lieu of partition of two pieces of marital property, and directed the parties to equally distribute the proceeds. *Id.*

Not long after, Jack was granted a monetary award of $62,000, minus one-half of the balance of principal and accrued interest associated with the remaining piece of marital property. *Id.* Hilda then submitted a motion for costs and expenses to the in banc panel, which was forwarded to the lower court. *Id.* at 526, 474 A.2d 894. After the auditor determined the amount of equity in the remaining piece of marital property, Hilda submitted a motion to modify the divorce decree, arguing that Jack's monetary award should be reduced to reflect his portion of the sales expenses associated with the remaining parcel of marital property. *Id.* at 525–26, 474 A.2d 894. The lower court denied Hilda's motion for modification and request for costs and expenses associated with the in banc panel. *Id.* Hilda noted an appeal, *id.*, and we dismissed it because the pending issues "were part of the same subject matter submitted to the in banc [panel]. . . ." *Id.* at 523, 474 A.2d 894.

Against this backdrop, the Court of Appeals noted that "[i]t is well settled that before the proscription against a further appeal by the moving party in an in banc appeal is applicable, there must be a decision by the in banc [panel] on the points reserved." *Id.* at 526, 474 A.2d 894 (footnote omitted). Thereafter, noting that Hilda appealed the lower court's denial of the motion for modification and request for costs and expenses, the Court concluded that an appeal was not precluded because "[r]egardless of the merits of either of these

rulings, *it is clear that the in banc [panel] did not have them as reserved points or reach a decision on these issues."* *Id.* (emphasis added).

*Merritts* was predicated on the notion that constitutional proscription under Article IV, § 22 was not applicable when an issue was not reserved for review. Implicit in this determination—and in Article IV, §22—is that an in banc panel cannot conduct a review unless a circuit court first addresses the issue it is reviewing. The validity of the injunction, and in turn, the contempt order in which it was based upon, was raised for the first time in appellant's "Motion To Reconsider, Alter Or Amend Order Dated July 9, 2010; Or, In The Alternative, Motion To Vacate Contempt Order Entered June 23, 2009 Pursuant To Rule 2–535(b)." Thus, as previously noted, if the in banc panel considered the merits of appellant's request to dissolve the injunction or vacate the contempt order, then it exceeded its jurisdiction.

On a separate note, we would be remiss to suggest that an in banc panel is never permitted to consider issues other than those reserved for review. In *Bd. of Med. Exam'rs v. Steward, supra,* 207 Md. at 110, 113 A.2d 426, a medical practitioner ("doctor") had his license revoked by the Board of Medical Examiners ("Board of Examiners"). The doctor appealed and the lower court reversed the decision because the Board of Examiners was "improperly constituted...." *Id.* After the case was remanded, the Board of Examiners reviewed the issue and, again, revoked the doctor's license. *Id.* The doctor appealed and the lower court reversed the decision on the merits. *Id.* at 110–11, 113 A.2d 426. A motion to reserve issues for review by an in banc panel was subsequently filed. *Id.* at 111, 113 A.2d 426. The panel, however, granted a motion to dismiss, noting that it had no jurisdiction. *See id.* On appeal, the doctor argued that "in deciding that it lacked jurisdiction to hear the points reserved ...," the in banc panel "refused to act within its jurisdiction and that this should be treated in the same way as if it had acted in excess of its jurisdiction." *Id.* The Court of Appeals disagreed, concluding

that the panel "had the power to decide the question of its own jurisdiction." *Id.*

*Steward* suggests that although jurisdiction is not generally reserved for review, it is within an in banc panel's purview to consider the issue. Absent an explanation for denying appellant's "Motion To Reconsider, Alter Or Amend Order Dated July 9, 2010; Or, In The Alternative, Motion To Vacate Contempt Order Entered June 23, 2009 Pursuant To Rule 2–535(b)," we are unsure whether the in banc panel denied appellant's request to dissolve the injunction and vacate the contempt order on the merits, or because the issue was not properly before it. Notwithstanding, we must dismiss appellant's appeal because the circuit court never addressed these issues.

 "[T]here is a long-standing bedrock rule of appellate jurisdiction, practice, and procedure that, unless otherwise provided by law, the right to seek appellate review . . . ordinarily must await the entry of a final judgment that disposes of all claims against all parties." *Silbersack v. AC & S, Inc.*, 402 Md. 673, 678, 938 A.2d 855 (2008); *see* Md.Code (2006 Repl.Vol.), § 12–301 of the Courts & Judicial Proceedings Article ("C.J."). A final judgment has three attributes:

> (1) it must be intended by the court as an unqualified, final disposition of the matter in controversy, (2) unless the court properly acts pursuant to Md. Rule 2–602(b), it must adjudicate or complete the adjudication of all claims against all parties, and (3) the clerk must make a proper record of it in accordance with Md. Rule 2–601.

*Rohrbeck v. Rohrbeck*, 318 Md. 28, 41, 566 A.2d 767 (1989).

 In order to consider a ruling final, the ruling must "determine *and conclude* the rights involved or . . . deny the appellant the means of further prosecuting or defending his or her rights and interests in the subject matter of the proceeding." *Id.* (emphasis included); *see also Highfield Water Co. v. Washington County Sanitary Dist.*, 295 Md. 410, 415, 456 A.2d 371 (1983); *Peat, Marwick, Mitchell & Co. v. The Los Angeles Rams Football Co.*, 284 Md. 86, 91, 394 A.2d 801

(1978). Moreover, the ruling must "leave nothing more to be done in order to effectuate the court's disposition of the matter." *Rohrbeck*, 318 Md. at 41, 566 A.2d 767.

Appellant noted an appeal when the in banc panel denied his "Motion To Reconsider, Alter Or Amend Order Dated July 9, 2010; Or, In The Alternative, Motion To Vacate Contempt Order Entered June 23, 2009 Pursuant To Rule 2–535(b)." Prior to that, the circuit court did not consider the merits of appellant's request to dissolve the injunction and vacate the contempt order. Because the in banc panel lacked jurisdiction to consider these requests, there was no final judgment that could be reviewed on appeal. Not even the exceptions to the final judgment rule could rescue this appeal from dismissal.[5]

**APPEAL DISMISSED. COSTS TO BE PAID BY APPELLANT.**

---

5. In *Salvagno v. Frew*, 388 Md. 605, 615, 881 A.2d 660 (2005), the Court of Appeals outlined the three exceptions to the final judgment rule: "[1] appeals from interlocutory orders specifically allowed by [C.J. § 12–303]; [2] immediate appeals permitted under [Md.] Rule 2–602; and [3] appeals from interlocutory rulings allowed under the common law collateral order doctrine."