CHARLES J. SCHUCK. Judge,
dissenting.
As set forth in the petition filed with this claim and further outlined in the majority opinion, the claimant. George Coy. Jr., was committed to the Pruntytown school for boys, on April 2°. I'M?. when he was fifteen vears of age: and shortly thereafter, or about June 4th of the same year, while engaged *52 or employed in doing certain laundry work, and at a time when the petition alleges that he had never had any previous experience in working in and about machinery of any kind, and which machinery, according to the petition filed, was of a dangerous and hazardous character, claimant was so badly injured by having his arm mangled in the said machinery as to necessitate its amputation, and thus make him a cripple throughout the remainder of his life.
The sole question presented here for our determination, upon the motion to dismiss heretofore interposed by the state, is whether or not the boys’ industrial school at Pruntytown is a penal institution, since the act creating the Court of Claims, prohibits us from considering any claim for damages that has arisen in any manner by reason of injury to an inmate while confined in a penal institution.
The seriousness of the claim and the nature of the injuries require that most careful consideration be given to the determination of the question involved in order that justice may be done.
An examination of all the various acts, beginning with the act of 1889, creating the Pruntytown institution and following through with the Acts of 1908, 1913, 1919 and the subsequent acts, show conclusively to my mind that the Pruntytown school is purely a correctional institution where boys of tender years who may have, by reason of their acts, become a detriment or a menace to society, can be put in the custody of the state authorities, where parental care shall be administered in such a fashion and manner as to regenerate and rebuild the boy in qestion and seek to make him a worth-while citizen when he stands on the threshold of manhood.
An impartial investigation of the provisions of these several statutes, now combined into the juvenile delinquency statute, shows beyond all question that it was the intention of the various legislatures, as well as of the authorities of the state in charge of the institution, to have boys committed there after a hearing by the juvenile court authorities and without a formal *53 conviction for some criminal offense in the criminal courts of our state. It is true that it is also provided that where a minor under the age of sixteen years has been convicted of a felony or of a misdemeanor, the judge of the said court is vested with the discretion of committing such minor to the reform school at Pruntytown, having in mind particularly the character of the reform school as a place of reform, and not of punishment, and so may order the boy so convicted, removed to and confined in said reform school. This language following the statute is, of itself, in my judgment, sufficient to establish the fact that in the minds of the legislators first creating the institution, it was treated wholly and solely as a reformatory and not as a place of punishment. This is further shown by subsequent acts, the whole tenor of which is the matter of reformation and reform and not of punishment for crimes that may have been committed.
Perhaps it would be well to consider the definition of the word "penal” in connection with the determination of the involved question. Webster, in the International Dictionary, defines the word “penal” in part as follows:
"Of or pertaining to punishment or penalties; as: a Designed to impose punishment; . . . c Inflicted as, or constituting, punishment or penalty, or used as means of punishment; ...”
Words and Phrases, Vol. 31, p. 579, defines penal as follows:
“The words ‘penal’ and ‘penalty’ strictly and primarily denote punishment, whether corporal or pecuniary, imposed and enforced by the state for a crime or offense against its laws.”
Surely from these definitions no comfort can be obtained in relation to their application to the institution at Pruntytown by simply saying that a school intended by the various legislatures and the officials of the state to be one created for the purpose of helping a child or a boy of immature age, could possibly fall within the meaning of those definitions. It is very plain to my mind, therefore, that no state institution may be classed as a "penal institution” within the meaning of the *54 statute referred to, unless it is established and presently maintained as a place of “punishment” for those who intentionally violate the laws of the state. It is my contention that impartial examination of our statute, relating to. the creation and establishment of this industrial school, inevitably leads to the conclusion that it was never intended that the school should be a place of punishment or a penal institution in the sense understood by the definitions given above, but rather a place where, through the gentle and proper administration of quasi-parental authority the boy’s habits and disposition may be so changed as to make him a worthwhile citizen.
The majority opinion simply makes the unqualified statement that in the judgment of the judges rendering the opinion, Pruntytown is a penal institution and contemplated as such within the meaning of section 4 of the act creating the Court of Claims, but offers no authorities whatsoever to sustain such conclusion. I have looked in vain, in a rather extensive examination of the authorities of other states, this matter never having been decided by our state courts before, for any conclusion or opinion that would sustain the majority opinion, but have found none. On the other hand, I have found that where this matter has been tested, the courts have been unanimous in holding that an industrial school is not a penal institution. See House of Refuge v. Ryan, 37 Ohio State, 197; Roth & Boyle v. House of Refuge, 31 Md. 329; Milwaukee Industrial School v. Milwaukee County, 40 Wis. 328; 22 Am. Rep. 702; Commonwealth v. Fisher, 62 Atlantic 198; 213 Pa. 48; Wisconsin Industrial School for Girls v. Clark County, 103 Wis. 651; 79 N. W. 422.
In House of Refuge v. Ryan, 37 Ohio State, supra, at p. 203, the court said when referring to the commitment to the house of refuge:
“The commitment is not designed as a punishment for crime, but to place destitute, neglected and homeless children, and those who are in danger of growing up as idle and vicious members of society, under the guardianship of the public authorities, for their proper care, and to prevent crime and pauperism.”
*55 In Roth & Boyle v. House of Refuge, 31 Md. supra, the Court said:
“The House of Refuge is not a prison, but a school where reformation and not punishment is the end; . .
The court in this case further indicated that the mere fact that the institution in question may be used as a prison for juvenile convicts did not change it from a reformatory to a prison. The Ohio court also said in House of Refuge v. Ryan, supra, that the institution in question was a home and a school, not a prison. In Milwaukee Industrial School v. Milwaukee County, 40 Wis., supra, the Court said (point 6 of syllabi and at p. 333):
"The commitment of the child to an industrial school, as authorized by (he statute, is not an imprisonment.
"... When children must be confined for crime, common humanity to them, common regard for the future welfare of the State, requires, in many cases, that they should be sent to some place of detention . . . where they may have a reasonable opportunity of becoming better, instead of worse, by their confinement; where the prison authorities are not their mere jailers, but are charged with parental duty as well as with parental authority; and where education for good is not only not excluded, but is made a condition of their restraint.”
Under the force of these authorities, each one of them applicable to the condition that is presented to this court in the petition as filed in this claim, and considering further the attitude of our own state authorities, in classifying these institutions, must we not justly and properly contradict the statement that Pruniytown is a penal institution?
It is fundamental that persons sent to or committed to a penal institution must first be tried and convicted of a criminal offense in the manner provided for by the constitution and laws of a state and sentence duly and lawfully imposed in accordance therewith.
*56 No state can legally condemn or imprison criminals in any other way, and to do so would be a gross violation of the constitutional rights of even the lowest and meanest criminal.
May I ask, then, docs the record before us prove that claimant has ever been convicted of a crime in a court of competent jurisdiction and given a sentence accordingly, to a penal institution? We look in vain for an answer so far as the proceedings in the instant claim are concerned, and we are rewarded only by the contention that there are bars on some of the windows at Pruntytown and therefore those detained there arc criminals, no matter how young and immature, irrespective of home environments that led to their confinement and notwithstanding the fact that they had never been convicted as provided by our own state constitution and criminal statutes; and notwithstanding that further no authority can be found (hat sustains the proposition or assumption that schools similar to Pruntytown are penal institutions. The state board of control, in charge of this institution, itself in its reports, does not classify this school as a penal institution; nor docs our own "Blue Book” classify it as such.
If Pruntytown is a penal institution, which by reason of the very term brands those confined there as criminals, and puts upon them an everlasting stigma that will be detrimental throughout (he remainder of their lives, then by the same line of reasoning the girls’ school at Salem and other similar institutions that we have for the reformation of youth throughout the state must be likewise classed. This conclusion shocks the conscience and makes us appreciate full well the significance of the phrase “man’s inhumanity to man.”
I cannot lend my judgment to the conclusion of the majority; not only is this now sixteen year old boy crippled for life, seemingly through no fault of his own, but we would now put upon him a further stigma at his tender age of being a criminal by reason of the fact that the juvenile court committed him to Pruntytown for reformation, instruction and further education.
I would overrule the motion heretofore made and filed by the state and hear the claim on its merits.