*Dominique Guillaume v. Chantal Guillaume*, No. 2928, September Term 2018, filed. Opinion by Beachley, J.


IN BANC APPEALS – RESERVATION OF ISSUES

IN BANC APPEALS – REQUIREMENTS FOR NOTICE FOR IN BANC REVIEW

**Facts**:

Dominique Guillaume ("Father") and Chantal Guillaume ("Mother") are the parents of three children. On May 10, 2017, the parties executed a "Memorandum of Agreement" in an effort to resolve legal and physical custody, child support, alimony, and some property issues. Two days later, the Circuit Court for Montgomery County entered a consent order incorporating the provisions of the Memorandum of Agreement.

By October 2017, both Father and Mother filed had petitions for contempt. Following a two-day hearing, the circuit court took the matters under advisement. Ultimately, the court found Mother in contempt, and dismissed Mother's contempt petition against Father. In addition to its contempt rulings, the court ordered Mother to pay Father $35,000 in attorney's fees. Mother timely filed a Notice for In Banc Review.

Father filed a motion to dismiss Mother's *in banc* appeal. In his motion, he claimed that the *in banc* panel lacked jurisdiction to review Mother's appeal pursuant to *State v. Phillips*, 457 Md. 481 (2018), because Mother's Notice for In Banc Review "listed no points or questions to be reviewed and gave no reasons why the Contempt Order was incorrect."

The *in banc* panel denied Father's motion to dismiss the appeal, and ultimately vacated the contempt order as well as the circuit court's award of attorney's fees. In vacating the award of attorney's fees, the *in banc* panel determined that the circuit court's contempt order improperly blurred the lines between a custody modification order and a contempt order. The *in banc* panel also held that the circuit court erred by failing to properly consider the factors set forth in Md. Code (1984, 2012 Repl. Vol.), § 12-103(b) of the Family Law Article ("FL"). Father timely appealed the *in banc* panel's decision.

**Held**: Affirmed.

Maryland Rule 2-551, which governs the procedures for seeking *in banc* review, does not require an *in banc* appellant to include the issues for review in the notice of appeal in order to properly "reserve" them. That Rule simply requires a party to reserve issues in the manner set forth in Rules 2-517 and 2-520. Notably, Rules 2-517 and 2-520 appear to contemplate lodging objections to rulings that precede the final judgment, and require the objecting party to lodge the objection to those "non-final" rulings as soon as practicable.

Similarly, *Phillips* does not hold that an *in banc* appellant must include the issues for review in the notice of appeal *in banc*. There, Phillips moved *in limine* to exclude evidence from his pending murder trial. *Phillips*, 457 Md. at 484. When he prevailed, the State filed a notice of appeal *in banc* from the circuit court's interlocutory order granting Phillips's motion *in limine*. *Id.* at 484-85. The *in banc* panel ultimately reversed the circuit court's order. *Id.* at 485. On appeal, the Court of Appeals held that, in the context of that interlocutory order, the State did not timely object to the *in limine* ruling and therefore did not reserve issues for *in banc* review. *Id.* at 511.

Here, because the *in banc* panel rendered a final judgment, Mother could appeal that judgment in the same way that a party may appeal a final judgment from the circuit court to the Court of Special Appeals. Accordingly, neither Rule 2-551 nor *Phillips* require an *in banc* appellant to include issues in a notice of appeal *in banc*. Mother therefore was not required to include issues for review in her Notice for In Banc Review, and the *in banc* panel had jurisdiction to review the circuit court's decision.

Additionally, the *in banc* panel did not err in vacating the attorney's fees award. Contrary to Father's assertions, the circuit court did not appear to award attorney's fees under FL § 12-103(c). Instead, in rendering its decision, the court specifically mentioned factors that appear in FL § 12-103(b), but not in FL § 12-103(c). To the extent the court awarded attorney's fees under FL § 12-103(b), it erred because there was insufficient evidence in the record concerning the parties' financial circumstances and needs.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2928

September Term, 2018

_____

DOMINIQUE GUILLAUME

v.

CHANTAL GUILLAUME

_____

Reed,
Beachley,
Gould,

JJ.

_____

Opinion by Beachley, J.

_____

Filed:  October 30, 2019

*Arthur, J., did not participate in the Court's decision to designate this opinion for publication pursuant to Maryland Rule 8-605.1.

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

In this appeal, Dominique Guillaume ("Father") challenges the decision of an *in banc* panel in the Circuit Court for Montgomery County which reversed the trial court's contempt finding against Chantal Guillaume ("Mother"). Father initially asserts that the *in banc* panel did not have jurisdiction to entertain Mother's request for *in banc* review. Alternatively, Father argues that, assuming the *in banc* panel had jurisdiction to hear Mother's appeal, it erred by vacating the trial court's $35,000 attorney's fee award against Mother. We conclude that the *in banc* panel had jurisdiction to consider Mother's appeal, and that it did not err in vacating the attorney's fee award and remanding the case for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

The parties are the parents of three children. On May 10, 2017, the parties executed a "Memorandum of Agreement," which, *inter alia*, resolved legal and physical custody of the children, child support, alimony, and some property issues. On May 12, 2017, the court entered a consent order that incorporated the terms and provisions of the Memorandum of Agreement.

By October 2017, both parties had filed petitions for contempt. Father's contempt petition alleged that Mother violated the joint legal custody provisions of the consent order because she "failed and refused to include [Father] in decision-making regarding the minor children." The specifics of Father's allegations of contempt are immaterial to our resolution of his appeal, but they included: 1) Mother's failure to inform Father that she planned to move the children out of Montgomery County and 2) Mother's failure to inform Father of important educational and medical decisions involving the children. Mother's

contempt petition alleged that Father violated the consent order by failing to apply for tuition benefits available through his employment with the International Monetary Fund on behalf of the parties' eldest child.

After a two-day hearing on both petitions, the circuit court took the matters under advisement. On February 9, 2018, the court delivered a bench opinion, followed by a written order dated February 22, 2018 (docketed on March 5, 2018). The court found Mother in contempt of the consent order for multiple reasons and dismissed Mother's contempt petition against Father. After finding Mother in contempt, the court addressed the sanctions to be imposed as a result of her conduct. As to the children, the court: 1) precluded Mother from exercising her tie-breaking decision-making authority as provided in the consent order until June 30, 2019, or until further order of court; 2) prohibited Mother from moving the children outside of Montgomery County or traveling with the children outside the Washington, D.C. metropolitan area without Father's written consent; and 3) ordered Mother to rescind in writing any form she had submitted to Montgomery County Public Schools requesting authorization for the parties' middle child to graduate early from high school. The court also ordered Mother to pay $35,000 in attorney's fees directly to Father's counsel.

On March 15, 2018, Mother moved to alter or amend the contempt order, which the court denied on April 20, 2018. On April 27, 2018, Mother filed a Notice for In Banc Review. She filed her *in banc* memorandum on June 4, 2018, and Father filed his

memorandum on June 25, 2018.[1]  On July 24, 2018, Father moved to dismiss Mother's request for *in banc* review, asserting that the *in banc* panel had no jurisdiction because Mother's Notice for In Banc Review "listed no points or questions to be reviewed and gave no reasons why the Contempt Order was incorrect."  Father based his motion to dismiss on a recently issued Court of Appeals opinion, *State v. Phillips*, 457 Md. 481 (2018), a decision that we will discuss at length *infra*.  The *in banc* panel denied Father's motion to dismiss.

After a hearing, the *in banc* panel issued a written opinion on October 26, 2018.  The *in banc* panel reversed the trial court's judgment of contempt.  In doing so, the *in banc* panel concluded that the trial court abused its discretion by using a contempt proceeding to modify a child custody order.  Specifically, the *in banc* panel determined that the trial court's suspension of Mother's tie-breaking authority and its imposition of restrictions on Mother's ability to relocate and travel with the children were not proper civil contempt sanctions.  The *in banc* panel further determined that the trial court's contempt order was deficient because it failed to contain a lawful purge provision as required by Maryland Rule 15-207(d)(2).  Finally, the *in banc* court vacated the attorney's fees award, concluding that the trial court failed to properly consider the factors set forth in Md. Code (1984, 2012 Repl. Vol.), § 12-103(b) of the Family Law Article ("FL").  Father timely noted this appeal.

---

[1] The parties stipulated to an extension of time for filing their Rule 2-551(c) memoranda.

**STANDARD OF REVIEW**

In *Hartford Fire Ins. Co. v. Estate of Sanders*, 232 Md. App. 24 (2017), Judge Deborah Eyler, writing for this Court, thoroughly explained the appropriate standard of review for appeals from decisions *in banc*. There, Judge Eyler explained that an *in banc* court "functions as a separate appellate tribunal[.]" *Id*. at 37 (internal quotation marks omitted) (quoting *Bienkowski v. Brooks*, 386 Md. 516, 553 (2005)). Because of its status as an appellate tribunal, the *in banc* court does not reconsider the decision of the trial court. *Id*. (quoting *Dabrowski v. Dondalski*, 320 Md. 392, 396 (1990)). Rather, the *in banc* court must "engage in appellate review of the trial court's decision." *Id*. (quoting *Azar v. Adams*, 117 Md. App. 426, 429 (1997)).

Judge Eyler proceeded to explain this Court's role in reviewing a decision *in banc*, stating, "As an appellate tribunal, the in banc court 'is subordinate to this Court just as we are subordinate to the Court of Appeals.'" *Id*. at 38 (quoting *Azar*, 117 Md. App. at 433). Judge Eyler compared our Court's role in reviewing an *in banc* decision to the Court of Appeals's role in reviewing a decision from our Court, noting that, in most instances, the appellate court ultimately reviews the judgment of the trial court. *Id*. Consistent with this principle, "When a pure question of law comes before either this Court or the Court of Appeals, the standard of review is *de novo*, that is, neither Court gives any deference to the trial court's interpretation of the law." *Id*. at 39 (citing *Nesbit v. Gov't Emps. Ins. Co*., 382 Md. 65, 72 (2004)). When reviewing a trial court's exercise of discretion, however, "our standard is abuse of discretion, which is highly deferential *to the trial court* that is the

4

judicial body that exercised its discretion." *Id*. at 40 (citing *Goodman v. Commercial Credit Corp*., 364 Md. 483, 491-92 (2001)).

Judge Eyler also recognized that not every issue on appeal stems from a trial court decision.

> Of course, sometimes issues arise on appeal that emanate from this Court to begin with and that will be decided by the Court of Appeals on further review without reference to a decision of the trial court. For example, if we were to dismiss an appeal for lack of an appealable order, the Court of Appeals on further review would be assessing our decision, not a decision by the trial court. Likewise, if we were to decide upon vacating a judgment that a limited remand was the proper disposition, the Court of Appeals on further review would be assessing our decision about that disposition, which obviously originated with us, not with the trial court.

*Id*. at 40. Such is the case with the first issue on appeal here, where the *in banc* panel— and not the trial court—made the legal determination that it had jurisdiction to consider Mother's *in banc* appeal.

Against this backdrop we review whether the *in banc* panel had jurisdiction to review Mother's *in banc* appeal—a purely legal question—without deference to the *in banc* panel's decision. *Id*. at 39. In reviewing the trial court's attorney's fees award, we apply the abuse of discretion standard. *See Sang Ho Na v. Gillespie*, 234 Md. App. 742, 756 (2017) (stating that "We review an award of attorney's fees in family law cases under an abuse of discretion standard" (citing *Steinhoff v. Sommerfelt*, 144 Md. App. 463, 487 (2002))).

## DISCUSSION

### I. The *In Banc* Court Had Jurisdiction To Consider Mother's Appeal

Before we discuss whether the *in banc* panel erred in vacating the trial court's award

of attorney's fees, we must first address Father's contention that the *in banc* court lacked jurisdiction to consider Mother's appeal. Father asserts that Mother failed to timely reserve questions for review because she did not include them in her Notice for In Banc Review, thus divesting the *in banc* court of jurisdiction.[2] In making his argument, Father relies on the Court of Appeals's decision in *State v. Phillips*, 457 Md. 481 (2018), a case interpreting the constitutional and procedural requirements for *in banc* review. As we shall explain, we hold that *Phillips* does not require an *in banc* appellant to state the questions for review in the notice for *in banc* review filed pursuant to Rule 2-551.

In Maryland, "[a]n in banc panel review has been endearingly referred to as 'the poor person's appeal.'" *Remson v. Krausen*, 206 Md. App. 53, 60 (2012) (quoting *Washabaugh v. Washabaugh*, 285 Md. 393, 396 (1979)); *see also Roth v. House of Refuge*, 31 Md. 329, 333 (1869). This is so because *in banc* appellate review was created "to offer disappointed litigants an alternative method of review that was faster and less expensive than an appeal to the Court of Appeals, and that avoided the necessity of traveling to Annapolis." *Id.* (quoting *Montgomery Cty. v. McNeece*, 311 Md. 194, 201 (1987)).

To provide context for our discussion of *Phillips* and *in banc* procedures, we note that Article IV, Section 22 of the Maryland Constitution states:

> Where any trial is conducted by less than three Circuit Judges, upon the decision or determination of any point, or question, by the Court, it shall be competent to the party, against whom the ruling or decision is made, upon motion, to have the point, or question reserved for the consideration of three

---

[2] Mother's "Notice for In Banc Review" states in its entirety: "Defendant, Chantal Guillaume, by and through undersigned counsel, files this Notice for In Banc Review, pursuant to Maryland Rule 2-551, to seek in banc review of the Contempt Order at Docket No. 166."

6

Judges of the Circuit, who shall constitute a court in banc for such purpose; *and the motion for such reservation shall be entered of record, during the sitting at which such decision may be made*; and the procedure for appeals to the Circuit Court in banc shall be as provided by the Maryland Rules. The decision of the said Court in banc shall be the effective decision in the premises, and conclusive, as against the party at whose motion said points, or questions were reserved; but such decision in banc shall not preclude the right of Appeal by an adverse party who did not seek in banc review, in those cases, civil or criminal, in which appeal to the Court of Special Appeals may be allowed by Law. The right of having questions reserved shall not, however, apply to trials of Appeals from judgments of the District Court, nor to criminal cases below the grade of felony, except when the punishment is confinement in the Penitentiary; and this Section shall be subject to such provisions as may hereafter be made by Law.

MD. CONST. art. IV, § 22 (emphasis added). Relevant to this appeal, the Maryland Constitution requires that the party noting an *in banc* appeal "reserve" the questions to be reviewed on appeal "during the sitting at which such decision may be made[.]" *Id.* Understanding the constitutional mandate of "reservation" of questions "during the sitting" is important in the resolution of this case.

Additionally, Maryland Rule 2-551, which governs the procedures for seeking *in banc* review, provides, in relevant part:

(a) When review by a court in banc is permitted by the Maryland Constitution, a party may have a judgment or determination of any point or question reviewed by a court in banc by filing a notice for in banc review. Issues are reserved for in banc review by making an objection in the manner set forth in Rules 2-517 and 2-520. Upon the filing of the notice, the Circuit Administrative Judge shall designate three judges of the circuit, other than the judge who tried the action, to sit in banc.

Regarding reservation, Rule 2-517(a), which governs evidentiary objections, requires the objecting party to object as soon as the grounds for the objection become apparent. Rule 2-517(c), which concerns "other rulings or orders," requires the party, "at the time the

7

ruling or order is made or sought, [to] make[] known to the court the action that the party desires the court to take or the objection to the action of the court." Rule 2-520(e), which concerns jury instructions, requires a party objecting to an instruction to object "on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection." We note that Rules 2-517 and 2-520 appear to contemplate lodging objections to rulings that precede the final judgment, and require the objecting party to lodge the objection to those "non-final" rulings as soon as practicable.

We now turn to *Phillips*, where the Court of Appeals explicitly considered the interplay between Article IV, Section 22 of the Maryland Constitution and Rule 2-551. In *Phillips*, the Court chronicled the constitutional history of Article IV, Section 22, the case law interpreting that provision, and the adoption of what is presently Maryland Rule 2-551. There, Phillips was charged with first-degree murder and related firearms violations. *Id.* at 484. Prior to his murder trial, Phillips filed a motion *in limine* to exclude evidence that the State intended to use against him. *Id.* Following a four-day hearing, the circuit court granted Phillips's motion and entered an interlocutory order on February 12, 2016, which excluded the objectionable documents and testimony. *Id.* The Court of Appeals described the manner in which the State then sought *in banc* review of the circuit court's interlocutory order granting the motion *in limine*:

> Six days later, on February 18, the State filed a request for in banc review of that order. The request, itself, was bare-boned. It noted the State's objection to the order but listed no points or questions to be reviewed and gave no reasons why the Order was incorrect. That was not done until the State filed its memorandum on March 18, 2016, in which it listed seven specific questions for review.

8

*Id.* at 484-85.

On March 3, 2016, the county administrative judge appointed three judges of the circuit court, including a panel chair, to serve as the *in banc* review panel. *Id*. at 485. Shortly thereafter, the *in banc* panel chair ordered the State to obtain a transcript of the motion *in limine* proceedings and set dates for the filing of memoranda. *Id.* Following a hearing in May, on June 3, 2016, the *in banc* panel reversed the order granting Phillips's motion *in limine*. *Id.* The *in banc* panel also denied Phillips's motion to dismiss the State's *in banc* appeal even though the panel recognized that the ruling on the motion *in limine* was not a final judgment and that, even if it were a final judgment, the State had no right under Title 12 of the Courts and Judicial Proceedings Article to appeal the granting of Phillips's motion. *Id.* After the Court of Special Appeals reversed the judgment of the *in banc* court, *id*. at 486, the Court of Appeals granted certiorari.

The Court of Appeals held that the *in banc* court lacked jurisdiction to consider the State's request for *in banc* review, relying on three separate bases to support its determination. *Id*. at 511-13. First, the Court determined that the State did not timely object to the *in limine* ruling and therefore did not reserve the issue for *in banc* review. *Id.* at 511. Second, the Court held that, absent any law providing otherwise, an interlocutory order such as the ruling on Phillips's motion *in limine*, is not immediately appealable. *Id.* at 512. Third, the Court held that, pursuant to the limited rights of appeal delineated in Md. Code (1973, 2013 Repl. Vol., 2018 Supp.), § 12-302(c) of the Courts and Judicial Proceedings Article ("CJP"), the State had no right to appeal the circuit court's evidentiary ruling on the motion *in limine* irrespective of its interlocutory nature. *Id.* at 512-13.

9

In this appeal, we are concerned only with the *Phillips* Court's first basis for concluding that the *in banc* court lacked jurisdiction—the timeliness of reserving issues for appeal. In holding that the State had not timely preserved its objection for *in banc* review, the Court explained:

> [The motion court's] ruling was made and docketed on February 12, 2016. The State filed a request for in banc review on February 18, 2016, but did not identify any points or questions for review or state reasons why [the trial judge] was wrong in his ruling until March 17, 2016,[3] when it filed its memorandum. Even if we were to give a more liberal interpretation to the meaning of "sitting" than was given in *Costigin* [*v. Bond*, 65 Md. 122 (1986)] because the ruling was not made in open court where a same-day objection is more feasible, and look instead to whether the State properly objected to the ruling as required by Rules 2-517 or 2-520, a month would not qualify as a timely objection and thus not a timely reservation.

*Id.* at 511. Notably, the Court did not expressly hold that the State was required to identify the "points or questions for review" in the notice of appeal *in banc* filed February 18, 2016. Instead, the Court simply held that the State did not timely "identify any points or questions for review or state reasons why [the trial judge] was wrong" until more than a month after the unfavorable evidentiary ruling, and therefore failed to reserve those issues for *in banc* review. *Id.*

In reaching its holding, the *Phillips* Court thoroughly reviewed the history and interpretation of the constitutional provision that an *in banc* appellant must timely ("during the sitting") reserve issues for appeal.

The first case to address the meaning of Article IV Section 22's phrase "during the

---

[3] Although not material to the holding in *Phillips*, there is a discrepancy whether the State filed its memorandum on March 17 or March 18, 2016. *See* 457 Md. at 485 (indicating March 18 filing date).

10

sitting at which such decision may be made" was *Costigin v. Bond*, 65 Md. 122 (1886). There, on March 31, 1885, a jury rendered a verdict in favor of the plaintiffs. *Id.* at 122-23. Just two days later, on April 2, the defendant filed a motion for a new trial, which the trial court denied. *Id.* at 123. The defendant then sought *in banc* review of that ruling. *Id.* The plaintiffs moved to dismiss the *in banc* appeal, presumably for lack of jurisdiction, but the *in banc* court denied the motion to dismiss. *Id.* The *in banc* court went on to reverse the trial court's decision and the plaintiffs appealed to the Court of Appeals. *Id.*

The Court of Appeals reversed the *in banc* court's ruling, holding that the defendant's reservation of the issues identified in his motion for a new trial was untimely. *Id.* at 124. The *Phillips* Court summarized the *Costigin* holding:

> Section 22 required (and still requires) that the reservation of the point or question be entered during "the sitting" at which the decision was made, which the Court interpreted to mean before the court adjourned for the day. As that was not done, the in banc court had no jurisdiction.

457 Md. at 498. The *Costigin* Court noted that "[t]he word 'sitting' is not synonymous with 'term' of the court" and held that an "exception to a ruling must properly be taken as soon as the ruling is made." 65 Md. at 124. Notably, the *Costigin* opinion made no reference to the contents of the defendant's notice for *in banc* review—rather, by failing to lodge an exception "as soon as the ruling [was] made," the defendant failed to timely reserve his issues for *in banc* review. *Id.* Thus, the *Costigin* Court deemed untimely the defendant's motion for new trial filed two days after the jury's verdict. *Id.* ("As the motion was not entered of record during the sitting at which the ruling was made, the [c]ourt in banc had no jurisdiction of the appeal.").

11

Nearly one hundred years later, the Court revisited the interpretation of Section 22's "reservation" of an issue "during the sitting" of the court in *McNeece*, 311 Md. 194. There, because the *in banc* court had declared a portion of Rule 2-551 unconstitutional, the Court of Appeals determined that it was "in the public interest to address the correctness of that ruling." *Id.* at 201. We rely on the *Phillips* Court's assessment of the issue presented in *McNeece*:

> The point at issue was the practice in place in 1867, and for years thereafter, that, to preserve a point for in banc review, an exception must be taken and noted at the time the ruling was made. That requirement was in the 1868 statute and was carried over in Md. Rule 510 until 1984, when, with the adoption of Rule 2-551, it was repealed.

*Phillips*, 457 Md. at 503-04. The *McNeece* Court acknowledged that "[t]he requirement of noting a contemporaneous exception in order to preserve a question for later appellate review was firmly ingrained in the common law." 311 Md. at 202 (citing *McCormick on Evidence* § 52 at 118-19 (E. Cleary 2d ed. 1972)). The Court also recognized the historical reasons for the contemporaneous exception rule:

> The purpose of a Bill of Exceptions was to bring before the appellate court for review matters which otherwise would not appear on the common law record due to the fact that there were no court reporters to record the testimony and the proceedings at the trial. This was before the days of shorthand and recording devices. After the Statute of Westminster II if a litigant believed the court had erred in a ruling, he could make it a matter of record by "saving his exception." For example, if counsel had objected to a question asked of a witness and the court had overruled the objection and counsel thought the ruling was erroneous, he could say, "If the court please, I desire to save an exception to your honor's ruling." The judge was then obliged to stop the trial and call the scrivener who, with his quill pen, would make a record on parchment. . . . When this document was completed, it would be signed by the judge. During the course of the trial numerous exceptions might be "saved." At the conclusion of the trial they would be bound together and certified by the trial judge as the Bill of Exceptions in the

12

case, and they would be attached to and become a part of the record on appeal. Today, with modern methods of court reporting, this antiquated method of preserving a record has become obsolete and court rules make "exceptions" unnecessary.

*Id.* at 202-03 (alteration in original) (quoting Milton D. Green, *Basic Civil Procedure*, 254-55 2d ed. 1979)). In light of that historical context, the Court recognized that it was "logical and understandable" that Section 22 included a requirement for "saving" exceptions during "the sitting" of the court. *Id.* at 203. However, the Court expressed its view that modern stenographic procedures made obsolete the practice of "saving the exception" where the trial judge stopped the proceedings to allow a scrivener to make a record of the objection. *Id.* at 203-04.

Again, we rely on the *Phillips* Court's concise summary of *McNeece* and the appellate procedures adopted in its wake:

> The [*McNeece*] Court recounted that, with the advent of court stenographers and verbatim accounts of trial proceedings, the need for contemporaneous written exceptions ceased to exist, and by the adoption in 1945 of Rule 17, the "unnecessary and outmoded" formality of noting exceptions was abolished with respect to ordinary appeals. *Id.* at 204, 533 A.2d 671, quoting from *Elmer v. State*, 239 Md. 1, 6-9, 209 A.2d 776 (1965). The modernization of appellate procedures accomplished by Rule 17 had no effect on the procedure to be followed in appeals to in banc courts, however, and "[b]ecause of the requirement that an exception be noted of record on the day the point or question was decided, in banc appeals were essentially unavailable in those cases in which a judge filed an order with the clerk and notified the parties by mail." *McNeece*, 311 Md. at 204-05, 533 A.2d 671. *Aware of the problem, the Court's Rules Committee proposed, and the Court approved, the deletion of the requirement of exceptions as part of new Rule 2-551.*

*Phillips*, 457 Md. at 504 (emphasis added).

*McNeece* held that the Court of Appeals had the constitutional authority to adopt

13

Rule 2-551, reasoning that "[t]he procedures established by Rule 2-551 do not impair the right to an in banc appeal and the rule is constitutional." 311 Md. at 207. The *Phillips* Court noted that, nearly twenty years after *McNeece*, a 2006 legislative amendment to Section 22, approved by the electorate in November 2006, confirmed that "the procedure for appeals to the circuit court in banc shall be as provided by the Maryland Rules." MD. CONST. art. IV, § 22; *see also Phillips*, 457 Md. at 506.

With that contextual background, we turn our attention to Father's argument that the *in banc* court here lacked jurisdiction. As stated above, Father relies on *Phillips* to argue that Mother failed to timely reserve her issues for *in banc* review. Specifically, Father claims that the following passage from *Phillips* confirms that a notice of appeal *in banc* must contain the issues for review:

> [The motion court's] ruling was made and docketed on February 12, 2016. The State filed a request for in banc review on February 18, 2016, but did not identify any points or questions for review or state reasons why [the trial judge] was wrong in his ruling until March 17, 2016, when it filed its memorandum. Even if we were to give a more liberal interpretation to the meaning of "sitting" than was given in *Costigin* [*v. Bond*] because the ruling was not made in open court where a same-day objection is more feasible, and look instead to whether the State properly objected to the ruling as required by Rules 2-517 or 2-520, a month would not qualify as a timely objection and thus not a timely reservation.

*Id.* at 511. In his brief, Father argues,

> Mother first raised the points, questions for review or reasons why the Trial Court was wrong in her In Banc Memorandum – filed three months after the Contempt Order was entered, and over one month after the Notice for *in* banc review was filed. Like the State's notice for *in banc* review in *State v. Phillips*, Mother's bareboned notice for *in banc* review in this case was insufficient to identify the points, questions for review and reasons why the trial court was wrong.

Father's argument is based on an inference he makes from *Phillips*. In his view, the *Phillips* Court's reference to the State's failure to list points or questions for review in its request for *in banc* review must be interpreted to mean that an *in banc* appellant is required to so identify those points or questions in the written notice for *in banc* review. According to Father, Mother's failure to do so deprived the *in banc* court of jurisdiction.

We reject Father's argument that an *in banc* appellant must identify the points or questions for review in the notice for *in banc* review in order to timely reserve them for appellate consideration. Such a rule would conflict with Rule 2-551(a), which states that "[i]ssues are reserved for *in banc* review by making an objection in the manner set forth in Rules 2-517 and 2-520." In our view, requiring a party to object to an evidentiary or other ruling as required by Rule 2-517, and then reiterate that same objection in the notice for *in banc* review, is contrary to the purpose and intent of Rule 2-551(a).

Our holding is consistent with *Phillips*. The issue in *Phillips* concerned reservation of an objection to an interlocutory ruling — the granting of Phillips's motion *in limine* to exclude the State's evidence. The Court held that the State had not properly reserved the evidentiary issue for *in banc* review because it had not complied with Rule 2-551's mandate that an objection be made "in the manner set forth in Rules 2-517 and 2-520." *Id.* at 511. Relevant to the ruling on the motion *in limine* in *Phillips*, Rule 2-517(c) provides that, "it is sufficient that a party, at the time the ruling or order is made or sought, makes known to the court the action that the party desires the court to take or the objection to the action of the court." The *Phillips* Court merely held that the State's *in banc* memorandum, filed more than a month after the trial court's ruling, did not qualify as a timely objection

15

to the admission or exclusion of evidence as required by Rule 2-517.[4]  Importantly, the

Court did not hold that a notice for *in banc* review must contain the points or questions for

review.  Indeed, the *Phillips* opinion contains no discussion of what is required in a notice

for *in banc* review filed pursuant to Rule 2-551(a).

Our holding that Mother's Notice for In Banc Review was sufficient to challenge

the trial court's *final* judgment is consistent with the case law reviewed in *Phillips*.  The

entire history of Section 22 and the case law interpreting it focused on the necessity of

making formal objections to evidence and other non-final rulings "during the sitting" of

the court, both before and after the "advent of court stenographers."  *McNeece*, 311 Md. at

204.  None of the many appellate cases interpreting Section 22 addressed what is required

to reserve issues for *in banc* review of a final judgment.  We note the Court of Appeals's

observation in a footnote in *Estep v. Estep* that:

> A reservation of points, being tantamount to registering an objection coupled
> with a declaration that the objector, at the appropriate time, intends to seek

---

[4] The authors of *Maryland Rules Commentary* express some skepticism with the notion that the State failed to reserve its arguments for the *in banc* appeal when, over the course of four days, the State presumably articulated its position concerning the motion *in limine*:

> Although the opinion of the Court of Appeals does not provide details about the arguments made at the hearing on the motion, it would seem that the State would have argued that the evidence should be admitted at trial and that the defendant's motion to exclude it should be denied, thereby making its position known to the court and thereby preserving the issue for review.  In light of this opinion, the practitioner may wish to file objections with the trial court shortly after the issuance of a ruling not made in open court or include more detail in the notice for *in banc* review.

Paul V. Niemeyer, Linda M. Schuett, & Joyce E. Smithey, *Maryland Rules Commentary* 246 (4th ed. 2018 supp.).

16

review of the trial court's ruling, simply saves the point or points in question for determination by the court in banc when a final, appealable judgment has been entered and does not act to bring the case to a halt until those issues are decided by a court in banc, unless, of course, an earlier appeal is allowed on some other recognized basis[.]

285 Md. 416, 423-24 n.8 (1979). The *Estep* Court's view that a "reservation of points" is the equivalent to preserving an objection for appellate review of a final judgment — a view expressly acknowledged in *Phillips* — corroborates our conclusion that the *Phillips* Court simply held that the State had not timely reserved its objection to the trial court's interlocutory ruling on the motion *in limine*, not that the *in banc* panel was divested of jurisdiction by a deficient notice for *in banc* review.[5]

The express provisions of Rule 2-551 further bolster our conclusion. Rule 2-551 simply provides that "a party may have a judgment or determination of any point or question reviewed by a court in banc by filing a notice for in banc review." The Rule does not require an *in banc* appellant to identify in her notice for *in banc* review the issues and errors in the final judgment for which she seeks review. Because Rule 2-551(b) requires a party to file her notice for *in banc* review within ten days after entry of judgment, it would be cumbersome and illogical to require the appealing party to set forth all of her appellate arguments in her notice for review.

Instead, all appellate issues can be addressed in the *in banc* appellant's memorandum to be filed within 30 days of filing the notice as required by Rule 2-551(c). This approach is consistent with the *Phillips* Court's observation that the procedures for an

_____

[5] The present case was a court trial. To preserve errors in jury instructions in a jury case, the *in banc* appellant must preserve those issues in accordance with Rule 2-520.

17

appeal *in banc* are meant to essentially imitate those for an appeal to a Maryland appellate court. In *Phillips*, the Court explained that the Rules Committee proposed "that the procedures governing appeals to the Court of Special Appeals apply as well to seeking review by an in banc court." 457 Md. at 507. Although the Court of Appeals rejected this proposal, it "approved its essence" in adopting Rule 2-551. *Id*. at 508. In fact, in the two alternative rulings in *Phillips*, the Court of Appeals noted "the true comparability and compatibility of in banc review with an appeal to the Court of Special Appeals and [the Court of Appeals]": "The appeal in both situations is from the judgment, which brings before the appellate court all issues that were properly preserved for appellate review, including those determined by interlocutory orders." *Id*. at 512 (citing *B & K Rentals v. Universal Leaf*, 319 Md. 127, 132-33 (1990)). This language vindicates our conclusion that the notice for *in banc* review of a final judgment does not require anything more than what would be required in a notice of appeal to our Court. By simply noting an appeal from a final judgment, an appellant—either *in banc* or before our Court—may raise all issues properly preserved for appellate review. A notice of appeal does not need to specify the orders appealed from and operates as an appeal of any order that is appealable at that time. *Edery v. Edery*, 213 Md. App. 369, 377 n.7 (2013) (citing *Hudson v. Hous. Auth. of Balt. City*, 402 Md. 18, 27 (2007)).

In conclusion, it would make little sense to impose more requirements to perfect an appeal in "the poor person's appeal" than those that exist in appeals to our Court or the Court of Appeals. Unlike in *Phillips*, Mother sought review of a final judgment. Her Notice for In Banc Review was sufficient to challenge any and all legal errors in that

18

judgment as well as any properly preserved objections as required by Rule 2-517 (and Rule 2-520 in jury cases). Because a one-line "Notice of Appeal" is sufficient to secure review of a final judgment by the Court of Special Appeals, Mother's "Notice for In Banc Review" is likewise sufficient under the Rules to secure review by an *in banc* panel. We therefore conclude that, because Mother's Notice for In Banc Review complied with the constitutional and procedural requirements of Section 22 and Rule 2-551, the *in banc* court had jurisdiction.

## II. The *In Banc* Court Did Not Err In Vacating The Trial Court's Award Of Attorney's Fees

Father's only substantive challenge to the *in banc* panel's decision concerns the issue of attorney's fees. As stated above, both parties filed contempt petitions, and following a two-day hearing, the court denied Mother's petition, granted Father's petition, and then awarded Father $35,000 in attorney's fees. Mother appealed the court's contempt order to the *in banc* panel.

In reversing the trial court's contempt order and vacating its award of $35,000 in attorney's fees against Mother, the *in banc* panel concluded that: 1) the trial court erroneously "blurred" the line between issuing a civil contempt sanction and modifying custody; and 2) the record lacked sufficient evidence concerning the parties' financial statuses to justify the fee award. Notably, Father does not challenge the *in banc* court's determination that the contempt order improperly modified custody.[6]

---

[6] Father likewise does not contend that the *in banc* court was incorrect in its determination that the contempt order lacked a purge provision as required by Rule 15-207(d)(2).

19

In his brief, Father asserts that the *in banc* panel erred because it failed to recognize that the trial court granted attorney's fees pursuant to FL § 12-103(c) rather than FL § 12-103(b).[7] FL § 12-103, which governs the award of attorney's fees, provides, in relevant part:

> (b) *Required considerations.*— Before a court may award costs and counsel fees under this section, the court shall consider:
> (1) the financial status of each party;
> (2) the needs of each party; and
> (3) whether there was substantial justification for bringing, maintaining, or defending the proceeding.

> (c) *Absence of substantial justification.* — Upon a finding by the court that there was an absence of substantial justification of a party for prosecuting or defending the proceeding, and absent a finding by the court of good cause to the contrary, the court shall award to the other party costs and counsel fees.

Father argues that the trial court found that Mother had no substantial justification in opposing his contempt petition or prosecuting her contempt petition. Citing *Davis v. Petito*, 425 Md. 191, 201 (2012), Father claims that the *in banc* court erred because FL § 12-103(c) does not require the trial court to consider the financial statuses or the needs of the parties before awarding attorney's fees.

We affirm the *in banc* court's decision for several reasons. First, we are not convinced that the trial court intended to award attorney's fees pursuant to FL § 12-103(c). Nowhere in the court's bench opinion did it refer to FL § 12-103(c), nor did it explicitly find that Mother lacked substantial justification in defending against Father's contempt

---

[7] This statute remains unchanged despite the recent release of the 2019 replacement volume.

action. More significantly, before making its attorney's fee award, the trial court stated that "[t]he [c]ourt has considered the financial situation of both sides." Although FL § 12-103(b) requires the court to consider the "financial status" and "needs" of the parties, FL § 12-103(c) mandates "an award of attorneys' fees and costs . . . so long as those fees and costs are reasonable." *Davis*, 425 Md. at 201. Thus, the financial circumstances of the parties are not part of the calculus for an award under FL § 12-103(c). *Id.* at 206 (holding that if court finds lack of substantial justification for maintaining claim and absence of good cause to the contrary, reasonableness of attorney's fees is the only consideration). In short, if the court truly intended to award Father attorney's fees pursuant to FL § 12-103(c), it would not have stated that it "considered the financial situation of both sides."[8]

Second, the inherent errors within the contempt order require us to vacate the award. Father does not dispute the *in banc* court's determination that the trial court improperly "blurred" the lines between contempt and modification of custody. We note that Father never renounced or objected to the court's sanctions, which improperly modified the legal custody provisions contained in the extant consent order. Indeed, Father specifically requested the court to impose improper sanctions. In his petition for contempt, Father requested that the court prohibit mother from moving the minor children from Montgomery County without Father's consent. During closing argument on the contempt, Father told the trial court:

---

[8] Additionally, we note that, despite finding Father's attorney's fees to be reasonable, the court only awarded $35,000 of the claimed $44,702 in fees. Had the court intended to utilize FL § 12-103(c), presumably it would have awarded Father all of his attorney's fees. *See Davis*, 425 Md. at 201, 206.

21

> Find her in contempt. Number one. Number two, suspend, don't change the party's [sic] agreement. But order that she not exercise her tie-breaking authority until either a year from June 30, 2018, that is to say June 30, 2019, or further order of Court. Suspend the tie-breaking authority.

It would be unusual — and in our view inequitable — to sustain Father's attorney's fee award under FL § 12-103(c) where there was no justification for the relief Father requested and received in the proceeding, resulting in a reversal of the underlying judgment. Because we have no difficulty concluding that Mother was justified in opposing Father's requests for relief, Father would not be entitled to an award of all of his attorney's fees under FL § 12-103(c).

Finally, in what appears to be an argument in the alternative, Father disputes the *in banc* panel's conclusion that there was insufficient evidence in the record concerning the parties' financial circumstances to support the award pursuant to FL § 12-103(b). Our thorough review of the record confirms the *in banc* panel's conclusion that there was inadequate financial information upon which to have based a FL § 12-103(b) award.[9] We therefore affirm the *in banc* court's vacation of the attorney's fees award. On remand, in the event the court intends to award fees pursuant to FL § 12-103(b), the court should conduct an evidentiary hearing to allow the parties to present evidence concerning "the financial status of each party" and "the needs of each party[.]" FL § 12-103(b).[10]

---

[9] We also note that the trial court never acknowledged the "needs of the parties" as required by FL § 12-103(b)(2), yet another basis for affirming the *in banc* panel's decision.

[10] Although not articulated by the parties in their briefs, at oral argument Mother acknowledged that the court on remand could conceivably award Father attorney's fees pursuant to FL § 12-103(c) to the extent that the court is able to ascertain fees related only to Father's defense of Mother's contempt petition.

**JUDGMENT OF THE IN BANC COURT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**